UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JEREMIAH BUSH, individually and
on behalf of all others similarly situated,

      Plaintiff,

                                 Case No. 3:10-cv-841-J-RBD-MCR

v.

CALLOWAY CONSOLIDATED GROUP
RIVER CITY, INC., a Florida corporation,
d/b/a FIVE GUYS FAMOUS
BURGER & FRIES

      Defendant.
_____/

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Jeremiah Bush, individually and on behalf of all others similarly situated, hereby moves for entry of an order certifying a class in this matter pursuant to Fed. R. Civ. P. 23. The reasons class certification is appropriate in this case are set forth below.

## I.    INTRODUCTION AND BACKGROUND

### A.    FACTA AND ITS REQUIREMENTS

In 2003, Congress passed, and President Bush signed into law, an amendment to the Fair Credit Reporting Act ("FCRA") – the Fair and Accurate Credit Transactions Act ("FACTA") – in order to assist in the prevention of identity theft and credit and debit card fraud.  FACTA required – and continues to require – merchants to take certain measures to protect their consumers from identity theft.  In relevant part, FACTA prohibits a merchant from printing more than the last five digits of credit and/or debit card account numbers **and** from printing the expiration date on electronically printed receipts provided to consumers at the point of sale.  15 U.S.C. §1681c(g).  One common method utilized by identity thieves is to collect lost and/or

discarded credit or debit card receipts and piece together the information obtained from these receipts to engage in fraudulent transactions at the expense of innocent and unsuspecting cardholders.   To thwart these efforts, Congress enacted FACTA and, by doing so, made a calculated determination to require companies, such as Defendant, to take *proactive* measures to limit exposure to their consumers.   To strike a balance between the importance of the new law to consumers, and the interests of businesses which would be subject to the law, FACTA was phased in over a three year period.[1]   Additionally, many credit card companies, merchant banks, and point-of-sale software providers sent notices to companies to advise them of FACTA's truncation requirements.

### B.   FACTUAL BACKGROUND

Defendant, Calloway Consolidated Group River City, Inc., is a wholly-owned subsidiary of Calloway Consolidated Group, Inc.   Calloway Dep. 6:6-8; 7:21-22.[2]   Defendant is a Five Guys Burgers and Fries franchise, among several owned through Calloway Consolidated Group, Inc.   Calloway Dep. 7:9-23.   Defendant's business is located and operated at the River City Marketplace, not far from the Jacksonville International Airport.   Calloway Dep. 24:9-25, 25:1-6.   Defendant has operated the restaurant at that location since approximately April 2007. Calloway Dep. 6:10-11, 48:4-9.

When Defendant began operating its business, a computerized point-of-sale ("POS") system was installed by Data Systems, Inc. d/b/a Retail Data Systems ("RDS").   Walt Davis Dep. 23:1-18; 42:12-25, 42:1-12.   Among other things, this POS system contained software and hardware used to accept credit and debit cards from consumers for payment of purchases from

---

[1] *See* Senate Committee on Banking Housing and Urban Affairs, Amending the Fair Credit Reporting Act, S. Rep. No. 108-166 (Oct. 17, 2003)("The phase-in periods are designed to give merchants a reasonable opportunity to come into compliance with this section.").

[2] "Calloway Dep." Refers to the transcript of the Fed. R. Civ. P. 30(b)(6) deposition of the Defendant taken on May 27, 2011, a copy of which has been filed.

the Defendant. Calloway Dep. 21:11-25, 22:1-25, 23:1-2.   While this POS system was maintained by RDS, Defendant's employees operated this POS system with respect to printing credit and debit card receipts and providing them to customers. Calloway Dep. 35:1-14, 22:4-13. Defendant's practice is, upon accepting payment for in-store orders from customers paying via credit or debit cards, to swipe the customers' cards and then hand the customers the "customer copy" of the credit card receipt reflecting the purchase. Calloway Dep. 27:16-25, 28:1-7.

On June 28, 2010, Jeremiah Bush went to the Defendant's restaurant and purchased a meal. *See* Redacted Receipt attached hereto as Exhibit "A".[3]   He paid for it using his personal American Express credit card. Bush Dep. 31:22-24.[4] Upon making that purchase, he was given a customer copy of the credit card receipt which printed the full expiration date from his credit card. Bush Dep. 20:1-17; *see also* Redacted Receipt attached hereto as Exhibit "A".

From December 23, 2008 until September 2010, Defendant was not in compliance with FACTA. Calloway Dep. 38:9-23.  Up to and through this time period, Defendant had received warnings regarding credit card receipt truncation requirements. Calloway Dep. 66:6-25, 67:1-25, 68:1-24, 91:10-25, 92:1-15, Exhibits 16-28.   During that time period, Defendant printed and distributed to customers thousands of receipts which, in violation of FACTA, failed to mask the expiration date of the credit or debit cards. Calloway Dep.  14:7-25, 15:1, 24:1-25, 25:1-25, 26:1-25, 27:1-25, 28:1-25, 29:1-25, 30:1-9, 38:9-23, 79:2-18. Specifically, the total number of

---

[3] Plaintiff's counsel is in possession of the original, unredacted, receipt. For purposes of the public filing of this class certification motion, Plaintiff has redacted the expiration date from the copy of the receipt attached hereto as Exhibit "A." Should the Court desire to see the unredacted receipt, Plaintiff is prepared to file an unredacted copy under seal.

[4] "Bush Dep." refers to the transcript of the deposition of Jeremiah Bush, taken May 27, 2011 in this case, a copy of which has been filed.

3

Defendant's credit and debit card transactions during this time period were over 72,000.[5] Calloway Dep. 79: 3-18, 82:18-25, 83:1-5, Exhibit 29.

## C.    PLAINTIFF'S COMPLAINT AND CLASS ALLEGATIONS

Plaintiff's complaint alleges that Defendant willfully violated FACTA by failing to truncate the expiration date of its customers' debit/credit card on the receipt it provided to its customers at the point-of-sale. Pl.'s Compl. ¶¶ 25-29. Defendant "is a person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA. Pl.'s Compl. ¶ 12. Defendant knew or should have known of FACTA's requirements, but willfully ignored the statute and failed to bring its machines into compliance by the date required, thereby increasing the risk of identity theft for potentially thousands of its customers. Pl.'s Compl. ¶¶ 13-29, 54-59 (detailing the widespread knowledge of the truncation requirements). Plaintiff, like each member of the proposed class, made a purchase at Defendant's place of business and, in return, received an electronically printed receipt that did not comply with FACTA. Pl.'s Compl. ¶¶ 39, 51.

Accordingly, Plaintiff seeks statutory damages on behalf of himself and the proposed class pursuant to s. 1681n(a)(1)(A). Pl.'s Compl. ¶ 60. As many courts have recognized, and as will be set forth in greater detail *infra*, FACTA does not require Plaintiff prove actual damages. *See* 15 U.S.C. § 1681(a)(1)(A). Rather, FACTA specifically entitles Plaintiff and the proposed class to recover statutory damages of "not less than $100 and not more than $1,000" for each aggrieved class member. *Id.*

---

[5] Defendant testified during deposition that there are a small number of transactions – internet and fax orders – whereby the Defendant accepts credit or debit cards for purchase but the Defendant does not physically hand a receipt to the customer at the point of sale. Calloway Dep. 70:1-25, 71:1-19, 72:2-8. These transactions number, on average, approximately 20 per month. Calloway Dep. 70:1-25, 71:1-19, 72:2-8. By comparison, the Defendant's total number of credit and debit card transactions average approximately 3,500 per month. Calloway Dep. 44:25, 45:1-16, 71:18.

Plaintiff respectfully moves for this Court's order granting class certification under Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the following class:

> All consumers to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, on which Defendant printed more than the last five digits of the consumer's credit card or debit card number; and/or

> All consumers to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after June 3, 2008, on which Defendant printed the expiration date of the consumer's credit card.

(the "Class"). Pl.'s Compl. ¶ 33.

Excluded from the foregoing class is Plaintiffs' counsel, the Court, and any person who suffered actual monetary damages as a direct result of Defendant's failure to comply with the requirements of FACTA.

The Complaint alleges that the following common questions predominate over individual questions:

> (a)   whether Defendant's conduct of providing Plaintiff and the members of the class with a sales or transaction receipt whereon Defendant printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card violated FACTA, 15 U.S.C. §§ 1681 *et seq.*;

> (b)  whether Defendant's conduct was willful; and,

(c)    whether Plaintiff and members of the class are entitled to

statutory damages, punitive damages, costs and/or attorneys' fees

for Defendant's acts and conduct.

Pl.'s Compl. ¶ 41.

The Complaint specifically delineates the reasons that class certification is appropriate

under all of the required elements of Rule 23(a) and (b) and expressly disavows any damages

that would be unconstitutionally excessive.  Pl.'s Compl. ¶¶ 34-44.

## II.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS

This Court should certify the Class because this matter meets all of the requirements of

the Federal Rules of Civil Procedure governing class actions.  The United States Supreme Court

has noted that cases involving statutory consumer protection claims – like this case – are

especially appropriate for class action treatment.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591,

625 (1997).  Additionally, this Court and other Florida federal courts have certified class actions

on other consumer claims seeking recovery of statutory damages.  *See, e.g., Hicks v. Client

Servs., Inc.*, No. 07-61822-CIV, 2009 WL 5479111, at *1 (S.D. Fla. Dec. 11, 2008) (granting

motion for class certification on FDCPA statutory damages claim); *Agan v. Katzman & Korr,

P.A.*, 222 F.R.D 692, 701 (S.D. Fla. 2004) (granting motion for class certification on FDCPA and

FCCPA claims for statutory damages); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D.

Fla. 2000) (same); *Swanson v. Mid. Am., Inc.*, 186 F.R.D. 665, 666-69 (M.D. Fla. 1999)

(granting motion for class certification on FDCPA claims).  The Eleven Circuit has found class

certification appropriate in consumer actions alleging statutory violations.  *See, e.g. Busby v.

JRHBW Realty, Inc.*, 513 F.3d 1314, 1327 (11th Cir. 2008) (in RESPA matter, affirming trial

court's finding that class representative and putative class met each requirement of Rule 23(a),

reversing trial court's denial of class certification under Rule 23(b), and determining proposed class satisfied Rule 23(b)(3)).

Notably, the only two United States Circuit Courts of Appeals which have addressed class action treatment of FACTA claims, the Fourth and the Ninth Circuits, have *reversed* trial court orders denying class certification. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) (herein "*Bateman II*"); *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267 (4th Cir. 2010). Further, United States District Courts throughout the country have routinely recognized the propriety of class certification in FACTA truncation cases. *See, e.g., Keller v. Macon Cnty. Greyhound Park, Inc.*, No. 3:07-cv-1098-WKW, 2011 WL 1085976 (M.D. Ala. Mar. 24, 2011); *Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537 (E.D. Wis. Mar. 29, 2011); *Hammer v. J.P. Sw. Foods, LLC*, 267 F.R.D. 284 (W.D. Mo. 2010); *Rogers v. Khatra Petro, Inc.*, No. 2:08-CV-294, 2010 WL 2894100 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's Butcher Shop, Inc.*, No. 09-C-3774, 2010 WL 658863 (N.D. Ill. Feb. 22, 2010); *Shurland v. Bacci Café & Pizzeria on Ogden Inc.*, 259 F.R.D. 151 (N.D. Ill. 2009); *Armes v. Shanta Enter., Inc.*, No. 07-C-5766, 2009 WL 2020781 (N.D. Ill. July 8, 2009); *Beringer v. Standard Parking, Corp.*, Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. Sept. 24, 2008); *Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831 (N.D. Ill. 2008); *Harris v. Best Buy Co., Inc., et al.*, 254 F.R.D. 82 (N.D. Ill. 2008); *Klingensmith v. Max & Erma's Rests., Inc.*, 2007 WL 3118505, at *2-3 (W.D. Pa. Oct. 23, 2007); *Redmon v. Uncle Julio's of Illinois, Inc.*, 2008 WL 656075 (N.D. Ill. March 7, 2008); *Matthews v. United Retail, Inc.*, 2008 WL 618960 (N.D. Ill. Mar. 5, 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 2008 WL 548767 (N.D. Ill. Feb. 26, 2008); *Troy v. Red Lantern Inn, Inc.*, 2007 WL 4293014 (N.D. Ill. Dec. 4, 2007); *Halperin v. Interpark, Inc.*, 2007 WL 4219419 (N.D. Ill. Nov. 29, 2007); *Medrano v. WCG Holdings, Inc.*, 2007 WL 4922525

(C.D. Cal. Oct. 26, 2007); *Reynoso v. South Cnty. Concepts, Inc.*, 2007 WL 4922524 (C.D. Cal. Oct. 26, 2007).

Here, the legal and factual issues which will control resolution of claims in dispute are straightforward and support certification of the Class.

## A.   CLASS CERTIFICATION STANDARD

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiff have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). Class certification is appropriate where a named plaintiff (i) has standing; (ii) satisfies each requirement of Rule 23(a) of the Federal Rules of Civil Procedure; and (iii) satisfies at least one of the requirements of Rule 23(b). *Busby*, 513 F.3d at 1321. "Rule 23 establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Those requirements are as follows: (1) the class is so numerous that joinder of all members is impracticable; (2) questions of law are common to all members of the class; (3) the claims or defenses of the named representative are typical of the claims or defenses of the class; and (4) the named representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Valley Drug Co.*, 350 F.3d at 1187-88. In determining whether these requirements are met, the court must take the allegations in support of certification as true and refrain from analyzing the merits of the case. *Eisen*, 417 U.S. at 177.

## B.   RULE 23(a) REQUIREMENTS ARE SATISFIED

Under Rule 23(a), one or more members of a class may sue or be sued as representative parties on behalf of all members in a class action where:

8

1.   the class is so *numerous* that joinder of all members is impracticable;

2.   there are questions of law or fact *common* to the class;

3.   the claims or defenses of the representative parties are *typical* of the claims or defenses of the class;

4.   The representative parties will fairly and *adequately* assert and protect the interests of the class.

Fed. R. Civ. P. 23(a).  For the reasons below, the proposed Class meets all of these criteria.

1.      The Class Satisfies the Numerosity Requirement of Rule 23(a)(1).

a)     *Joinder of all members of the proposed class is impracticable.*

Rule 23(a)(1) requires that the proposed class must be "so numerous that joinder of all members is impracticable."  1 H. Newberg and A. Conte, NEWERG ON CLASS ACTIONS, §3:5 (4th ed. 2003).  No definite standard exists as to what size class satisfies the requirements of Rule 23(a).  *See Hively v. Northlake Foods, Inc.,* 191 F.R.D. 661, 666 (M.D. Fla. 2000).  The numerosity requirement is generally satisfied when the class has more than 40 members.  *See, e.g. Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986).  It is well established that a plaintiff need not prove the exact number of members or identify each class member.  *See Vega v. T–Mobile USA, Inc.,* 564 F.3d 1256, 1267 (11th Cir. 2009); *Evans v. United States Pipe and Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983).

Here, Defendant admits that approximately 3500 credit and debit card transactions occurred at Defendant's restaurant per month during the relevant time period, and that more than 72,000 transactions occurred from December 23, 2008 until September 17, 2010 – the time period during which Defendant was not complying with FACTA. Calloway Dep. 44:25, 45:1-16, 71:18; 79: 3-18, 82:18-25, 83:1-5, Exhibit 29. These approximations are confirmed upon review of monthly merchant processing statements sent to Defendant by its credit card processor

9

during the relevant period.  *See* Merchant Processing Statements for the Period beginning January 2009 through September 2011 which are attached to the Calloway Dep. as Composite Exhibit 10.  Defendant also readily admits that it printed FACTA non-compliant receipts from December 23, 2008 until September 17, 2010.  Calloway Dep. 38:17-23.  Thus, the proposed Class consists of approximately 72,000[6] members.  A class of approximately 72,000 meets the numerosity requirement of Fed. R. Civ. P. 23(a).  Defendant cannot credibly dispute this fact.

b)   <em>The proposed class members are ascertainable.</em>

Various courts have held that Rule 23(a) also contains an implicit requirement that the class be ascertainable.  *Rink v. Cherminova, Inc.*, 203 F.R.D. 648, 659 (M.D. Fla. 2001); *Neumont v. Monroe Cnty., Fla.*, 198 F.R.D. 554, 556-557 (S.D. Fla. 2000) (citing *Hispanics United of Dupage Cnty. v. Vill. Of Addison, Ill.*, 160 F.R.D. 681, 686 (N.D. Ill. 1995) (finding class sufficiently identifiable where definition included "all those [within a certain geographic location] who have been or will be . . . adversely affected by" defendants' allegedly discriminatory practices)).  Ascertainability does not mean that the class must be ascertained at the time of certification; rather, the class members must be "ascertainable at some stage of the proceedings." *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 154 (S.D.N.Y. 2010) (citing *Noble v. 93 Univ. Place Corp.*, 264 F.R.D. 330, 338 (S.D.N.Y. 2004); *see also Rink*, 203 F.R.D. at 659 ("While the precise numbers of proposed class members need not be established, the class description must be sufficiently definite for the court to ascertain member status."); *Shurland*, 158, 160 ("The case law is clear, however, that a present lack of identifying

---

[6] Defendant testified during deposition that there are a small number of transactions – internet and fax orders – whereby the Defendant accepts credit or debit cards for purchase but the Defendant does not physically hand a receipt to the customer at the point of sale.  Calloway Dep. 70:1-25, 71:1-19, 72:2-8.  These transactions number, on average, approximately 20 per month.  Calloway Dep. 70:1-25, 71:1-19, 72:2-8.  By comparison, the Defendant's total number of credit and debit card transactions average approximately 3,500 per month.  Calloway Dep. 44:25, 45:1-16, 71:18.  These few internet and fax orders do not impact numerosity or any other Rule 23 factor.

details such as contact information or the names of class members need not defeat class certification."). "This requirement will generally be met where membership in the class can be identified by 'reference to objective criteria.'" *Friedman-Katz*, 270 F.R.D. at 154 (quoting *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 97 (S.D.N.Y. 2010)); *see also Hammer v. J.P.'s Southwestern Foods, LLC*, at *2 (finding post-certification submission of a claim form by class members an appropriate method of ascertaining members of the class).

Courts have found class definitions *nearly identical* to Plaintiff's proposed Class definition ascertainable. In *Friedman-Katz*, the court held the following proposed class definition ascertainable: "all debit or credit card customers who received a receipt from Lindt Store # 347 whose receipt was printed after December 4, 2006 and contained more than the last five digits of their credit card number, or whose receipt was printed after June 3, 2008 and contained the expiration date of the credit card." 270 F.R.D. at 154. There, as here, the plaintiff sought recovery of statutory, not actual, damages against the defendant. The court found that membership in the above-defined class was "defined by identifiable criteria," the "contours" of which were "clearly set forth" such that "class membership [could] easily be determined." *Id.* Moreover, the court flatly rejected defendant's attempt to inject artificial uncertainty into the class, stating "the small number of individualized factual determinations that must be made here in ascertaining membership in the class are entirely manageable." *Id.* at 154-55.

### 2.   The Class Satisfies the Commonality Requirement of Rule 23(a)(2)

Rule 23(a)(2) requires only that there be a single common question of law **or** fact in order for the court to certify the class action. Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). This is not a heavy burden and it "is easily met in most cases." Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* s. 3.10, at 3-50 (3d.

ed. 1992).  Rule 23(a)(2)'s commonality requirement requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355.  This case raises numerous questions of both law and fact which are common to the class.  The common issues include, but are not limited, to the following:

> (a)  whether Defendant's conduct of providing Plaintiff and the members of the class with a sales or transaction receipt whereon Defendant printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card violated FACTA, 15 U.S.C. §§ 1681 *et seq.*;
>
> (b)  whether Defendant's conduct was willful;  and,
>
> (c)  whether Plaintiff and members of the class are entitled to statutory damages, punitive damages, costs and/or attorneys' fees for Defendant's acts and conduct.

Pl.'s Compl. ¶ 41.

Nearly every district court addressing commonality in FACTA cases has held that the aforementioned legal and factual issues unquestionably meet the threshold for commonality. *See, e.g. Stillmock*, 385 Fed. Appx. at 272-73 ("Here, the putative class members were exposed to the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant . . . it strains credulity to conclude that the individual damages issues presented by the purported class which [p]laintiffs seek to certify would be anything other than simple and straightforward."); *Keller*, 2011 WL 1085976, at *6; *Hammer*, 267 F.R.D. at 288 (finding the overriding legal issue of whether the non-compliance was willful such that class members are entitled to statutory damages and the overriding factual issue of defendant's

standardized conduct shows commonality is met); *Shurland*, 259 F.R.D. at 158 ("common questions of fact (when and under what circumstances Defendant printed the receipts on its machines) and law (assuming Defendant printed the receipt, whether Defendant did so willfully and what damages may be appropriate)" met commonality); *Matthews*, 2008 WL 618960, at *4 ("the common nucleus of operative fact is the defendant's issuance of receipts that display the expiration date or more than five digits of a person's credit card in violation" of FACTA); *Cicilline*, 542 F. Supp 2d. at 836.; *Reynoso*, 2007 WL 4922524, at *2 ("The overriding legal issue is whether [defendant's] non-compliance was willful....Accordingly, there is a common core of salient facts and legal issues.").

The central questions – whether Defendant had a practice of providing noncompliant receipts to its customers and whether Defendant willfully violated FACTA – are identical in all material respects from one class member to the next. The inquiry here will focus on Defendant's conduct regarding its standardized POS System, a system uniform with respect to Defendant's operations and which impacted Plaintiff and the Class in an identical manner.   Here, as in the cases cited *supra*, Plaintiff has readily met the commonality requirement.

3.   <u>The Class Satisfies the Typicality Requirement of Rule 23(a)(3)</u>

Plaintiff's claims in this case are "typical" of the claims alleged on behalf of the Class. Plaintiff's claims present the same fact patterns and legal theories which each Class member would have to present if he or she filed an individual suit.  The claim of every Class member is based upon the same allegedly "willful" conduct by Defendant.  Plaintiff, as well as each member of the class, was a customer of Defendant who made a purchase from Defendant and who received from Defendant a credit/debit card receipt containing information prohibited by FACTA.  Plaintiff's claims are, therefore, not only typical of the claims of the Class, they are

13

identical to them. *See Hammer*, 267 F.R.D. at 287 (accepting plaintiff's claim that his claims are identical to those of the proposed class); *Redmon*, 2008 WL 656075, at *3 (finding plaintiff's claim typical of those of class members where plaintiff and class members all received receipts from defendant which violated FACTA); *Meehan*, 2008 WL 548767, at *2 (same); *Troy*, 2007 WL 4293014, at *2 (same); *Cicilline*, 542 F. Supp. 2d at 836 (same); *Reynoso*, 2007 WL 4922524, at *3 (plaintiff's claim is not only typical of, but "substantially identical" to, claims of class members, where he alleged that defendant a receipt in willful violation of FACTA); *Medrano*, 2007 WL 4922525, at * 3 (same). Similarly, here, Plaintiff's claims satisfy the typicality requirement.

    4.    <u>The Class Satisfies the Adequacy of Representation Requirement of Rule 23(a)(4)</u>

Rule 23(a)(4) tests the adequacy of the named plaintiff and class counsel. "The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Keller*, 2011 WL 1085976, at *8 (citing *Busby*, 513 F.3d at 1323 (quoting *Valley Drug Co.*, 350 F.3d at 1189)). This requirement merely assures that absent class members, who will be bound by the result obtained by the named plaintiff, are protected by a vigorous and competent prosecution of the case by someone who shares their interests. *See* 1 NEWBERG ON CLASS ACTIONS, §3:21 (4th ed. 2004).

Plaintiff in this case is plainly adequate. Other than the claim Mr. Bush asserts in this litigation, which is asserted on behalf of the Class, he does not presently have, nor has he ever had, any claims against the Defendant. Bush Dec. ¶ 2.[7] Mr. Bush is not a party to any other litigation against the Defendant, and is not aware of any conflicts that he has with any other class

---

[7] "Bush Dec." is the Unsworn Declaration Under Penalty of Perjury of Jeremiah Bush Supporting Motion For Class Certification made pursuant to 28 U.S.C. § 1746, which is attached hereto as Exhibit "B."

members.   Bush Dec. ¶ 3.   Mr. Bush does not have a family relationship with any of the attorneys or law firms (or any of the other attorneys within these firms) representing him in this matter, and proposed as Class counsel, nor is he employed by or otherwise economically dependent upon any of them.   Bush Dec. ¶ 3.   Mr. Bush is familiar with this lawsuit and understands the claims asserted in it.   Bush Dec. ¶ 4.   In fact, prior to filing the complaint in this case, Mr. Bush reviewed a draft complaint in order to ensure the accuracy of the facts pertaining to him therein.   Bush Dec. ¶ 4.   Mr. Bush has shown himself to be committed to the progression and the ultimate outcome of this case; he has consulted with and met personally with the Mr. Duncan and Mrs. Olinto on multiple occasions to discuss the issues in the case, review documents, prepare and sign answers to interrogatories, and to prepare for his deposition.   Bush Dec. ¶ 4.   Moreover, Mr. Bush has already sat for a deposition in this matter[8], and has stated that he is prepared and willing to participate in any other aspect of the litigation as class representative, including attendance at hearings, conferences, depositions and mediation.   Bush Dec. ¶ 5.   Lastly, Mr. Bush is acutely aware of the financial obligations and costs of this litigation, and has stated his readiness to pay appropriate costs herein.   Bush Dec. ¶ 5.

Plaintiff is represented by counsel with substantial experience in class litigation.[9] Therefore Plaintiff satisfies the adequacy of representation requirements of Rule 23(a)(4). [10]

## C.   RULE 23(b) REQUIREMENTS ARE SATISFIED

If the Court concludes that all four requirements of Rule 23(a) have been met, the Court

---

[8] Plaintiff submitted to a deposition by defense counsel on May 27, 2011.
[9] *See* VBWR Firm Resume and Carlson Lynch Firm Resume attached to Plaintiff's Motion for Class Certification as Composite Exhibit "C".
[10] Any attempt by Defendant to argue that Plaintiff's "failure to warn" Defendant of the FACTA violation evidences a conflict with the Class must fail, as this exact argument has been rejected. *Sogro*, 2011 WL 1197537, at *4 ("how [plaintiff's] failure to inform [defendant] of the fact that its conduct was violating FACTA translates into inadequacy toward the class is unclear").

must also ensure that the proposed class satisfies one of three criteria in Fed. R. Civ. P. 23(b).  In this case, Plaintiff seeks certification under Rule 23(b)(3).

Pursuant to Rule 23(b)(3), a class action is maintainable where:

> The court finds that questions of law or fact common to the members of the class **predominate** over any questions affecting only individual members and that a class action is **superior** to the other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3)(emphasis added).

### 1.    Common Issues Predominate

"Predominance 'goes hand in hand with the commonality requirement[.]'" *Sogro*, 2011 WL 1197537, at *4 (quoting *Cicilline*, 542 F. Supp. 2d at 838).  "[T]he predominance requirement is more demanding than the commonality requirement." *Beringer*, 2008 WL 4390626, at *10.  Nevertheless, as is the case here, "[b]oth of [these] requirements are usually satisfied when there is standardized conduct by a defendant toward members of the proposed class, and a common nucleus of operative facts is present." *Cicilline*, 542 F. Supp. 2d at 838. Further, in *Amchem,* the Supreme Court noted that the predominance requirement is easily met in consumer protection cases such as this one. *See* 521 U.S. 591, 625 (1997).

Here, Plaintiff and the Class allege statutory injury by a common course of conduct.  The primary issue in the case is whether Defendant's violation of FACTA was "willful," thereby triggering Plaintiff's entitlement to statutory damages, and this inquiry predominates over any possible individual issues in this case. *See, e.g. Shurland*, 259 F.R.D. at 159; *Stillmock*, 385 Fed.Appx. at 273; *Shanta Enter.*, 2009 WL 2020781, at *4-5; *Hammer*, 267 F.R.D. at 289.

Plaintiff anticipates that Defendant may argue that common issues do not predominate because some corporate credit cards may have been used during the relevant class period.  This argument must fail. *See Sogro*, 2011 WL 1197537, *3, *5-6; *Hammer*, 267 F.R.D. at 289

("Where [  ] common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain") (internal citations omitted).  In *Sogro*, the defendant argued that typicality and predominance were not met where (i) the plaintiff was on a business trip when the credit transaction at issue in the litigation occurred and (ii) "each cardholder must be asked whether the transaction was for a personal or business purpose or whether the card was an individual or corporate credit card[.]"  *Id.* at *3, *6. The court found this argument "unconvincing," reasoning that the plaintiff:

> used his personal debit card in the credit transaction at issue; thus, his personal card information was subject to identity theft. Personal debit cards are personal debit cards no matter the purpose of the expense or whether someone's mother, friend, or employer ends up paying the bill or reimbursing the cardholder.  As an individual using his own personal debit card, [the plaintiff] was the same as any other individual class member who used a personal credit or debit card.

*Id.* at * 3.  Moreover, the court found that the class definition plainly excluded corporations from the class definition.  *Id.* ("the class definition is of 'persons' using 'the person's' credit or debit card").  In this case, Plaintiff's definition is even more clear: the definition of the Class restricts membership to "consumers."  Here, as in *Sogro*, this Court should find that "later identification of corporate cardholders [is] not a problem for the purpose of class certification."  *Id.*  Regarding predominance of common questions, the *Sogro* court reasoned that the defendant's "argument that predominance is not met because each cardholder must be asked whether the transaction was for a personal or business purpose or whether the card was an individual or corporate card is rejected for the reasons discussed above concerning typicality."  *Id.* at *6.

For the aforementioned reasons, predominance is not credibly in dispute in this case.

2.     A Class Action is Superior

Rule 23(b)(3) requires that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides a non-exhaustive list of factors to consider in determining superiority, which include, (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and, (D) the difficulties likely to be encountered in the management of a class action. *Id.*

Courts routinely find class resolution "superior" in consumer protection actions, including the FACTA cases cited above, and in other cases considering the same statutory damage provision under FCRA. *See, e.g., Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005) (FCRA claims); *Murray v. GMAC Mortg. Corp. ("Murray I")*, 434 F.3d 948, 953 (7th Cir. 2006) (FCRA claims); *White v. E-Loan*, 2005 WQL 1287611, at *7 (N.D. Ca. August 18, 2006) (FCRA claims); *Forrest v. C.M.A. Mortg., Inc.*, 2007 WL 188979, at *2-3, (E.D. Wisc. Jan. 19, 2007) (FCRA claims); *Ashby v. Farmers Ins. Co. of Oregon*, 2004 WL 2359968, at *7 (D. Or. Oct. 18, 2004) (FCRA claims); *In Re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) (class action is superior method – particularly over individual suits –for fair and efficient adjudication of claims involving large many persons injured by violations of consumer protection laws); 6 NEWBERG ON CLASS ACTIONS §21:30 (4th ed. 2003) ("The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value

of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public.").

The Ninth Circuit Court of Appeals recently considered the question of superiority in the specific context of FACTA claims. *Bateman II*, 623 F.3d at 711. There, the Ninth Circuit Court of Appeals reversed the district court's denial, first without prejudice and then with prejudice, of the plaintiff's motion for class certification. *Id.* The district court denied the plaintiff's motion for class certification, citing the plaintiff's failure to show superiority; specifically, "the district court denied certification because, in its opinion, class treatment could result in enormous liability completely out of proportion to any harm suffered by [the] plaintiff" and the defendant "demonstrated good faith by complying with FACTA within a few weeks" after the plaintiff filed his FACTA complaint. 623 F.3d at 711. During this time, "Congress amended FACTA to address prevalent misunderstandings and to provide businesses some measure of relief from those misunderstandings." *Id.* at 712 (citing Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. No. 110-241, 122 Stat. 1565 (2008). The plaintiff renewed his motion for class certification, and the district court denied the motion with prejudice, citing the same reasoning and adding that because the plaintiff "had alleged no actual harm, class certification would not further the purpose and policy of FACTA." *Id.*

The Ninth Circuit reversed, holding (i) Rule 23(b) does not permit consideration of the proportionality of liability to harm suffered by the plaintiff in deciding whether to certify a FACTA case (*Id.* at 713); (ii) consideration of the magnitude of the defendant's liability was an inappropriate reason to deny class certification (*Id.* at 721); and (iii) any consideration of "post-complaint good faith compliance was inconsistent with congressional intent in enacting

FACTA." *Id.* at 723.[11]   Regarding proportionality, the Ninth Circuit explained that the only "federal court of appeals to have addressed the [proportionality] issue in the context of the FCRA rejected" the consideration of a defendant's enormous liability in the Rule 23(b)(3) superiority analysis. *Id.* at 714 (citing *Murray*, 434 F.3d at 953-54 (7th Cir. 2006)). Explaining further, the Ninth Circuit stated that

> The need for statutory damages to compensate victims is plain. The actual harm that a willful violation of FACTA will inflict on a consumer will often be small or difficult to prove. As the Seventh Circuit similarly noted in *Murray*, under the FCRA, "individual losses, if any, are likely to be small- a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury."

*Id.* at 718 (citing *Murray*, 434 F.3d at 953). Moreover, "the plain text of the statute makes absolutely clear that, in Congress' judgment, the $100 to $1000 range is proportionate and appropriately compensates the consumer. *Id.* at 719.

Regarding the potential magnitude of the defendant's liability, the Ninth Circuit explained, "the reason that damages can become enormous under FACTA 'does not lie in an abuse of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person,' combined with multiple violations of the statute." *Id.* at 722 (quoting *Murray*, 434 F.3d

---

[11] Plaintiff anticipates Defendant will rely heavily upon a Southern District of Florida opinion – *Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693 (S.D. Fla. 2009) – in its analysis of the superiority of Plaintiff's proposed Class. Critically, in *Leysoto*, the Court began its superiority analysis by stating that "[t]he majority of district courts to consider potential FACTA class damages at the motion to certify stage have denied certification for failure to satisfy Rule 23(b)(3)'s superiority requirement." 255 F.R.D. at 698. The *Leysoto* court cited *Bateman v. Am. Multi-Cinema, Inc.*, 252 F.R.D. 647 (C.D. Cal. 2008) (herein, "*Bateman I*"), as well as a number of other district court opinions from the Central District of California, for this proposition. *Leysoto*, 255 F.R.D. at 698 (majority of courts "generally reason that FACTA certification would permit potentially annihilating statutory damages to be awarded against a defendant business, without any requirement or proof of actual harm."). As explained *supra*, shortly after the order entered in *Leysoto*, the authority on which the *Leysoto* court relied was overturned by the Ninth Circuit for the district court's improper consideration of the proportionality of damages to actual harm and the potential annihilative effect of the damages award. *See Bateman II*, 623 F.3d at 713, 722-723.

at 953).  Further, Congress has placed caps limiting aggregate liability where it was concerned about the enormity of potential liability and, despite amending FACTA, Congress took no affirmative step to limit liability as it has done in the context of several other consumer protection statutes.  *Id.* (citing amendment to TILA - codified as amended at 15 U.S.C. § 1640(a)(2)(B))(capping class action damage awards at $500,000 or one percent of the defendant's net worth) and amendment to FDCPA - codified as amended at 15 U.S.C. § 1692k(a)(2)(B) (setting the same limit under Fair Debt Collection Practices Act)).  The Ninth Circuit reasoned, "[i]n the absence of such affirmative steps to limit liability, we must assume that Congress intended FACTA's remedial scheme to operate as it was written.  To limit class availability merely on the basis of 'enormous' potential liability that Congress explicitly provided for would subvert congressional intent." *Id.*

As to post-complaint compliance, the Ninth Circuit explained "Congress did not include any safe harbor or otherwise limit damages for good faith compliance with the statute after an alleged violation." *Id.* at 723.  In fact, "to deny certification on this ground would communicate to other potential violators that, as long as they comply with FACTA after a complaint is filed, they may avoid liability for widespread violations.  In other words, to deny class certification on this ground undermines the deterrent effect of FACTA itself." *Id.* at 723-24.

District courts across the country have likewise found that FACTA claims are especially well-suited for class resolution. *Matthews*, 248 F.R.D. 210, 216 ("FACTA claims are especially well-suited to resolution in a class action where, as here, 'potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'").  Several of these courts have explicitly addressed, and recognized as disingenuous, arguments that individual actions are superior to class actions on FACTA claims because FACTA provides for recovery of punitive

damages, attorneys fees and costs, and damages. *See Hammer*, 267 F.R.D. at 290 ("where the potential recovery is slight compared to the cost of litigation, there is little incentive to pursue an individual claim"); *Stillmock*, 385 Fed. Appx. at 274-75 ("First the low amount of statutory damages available means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective. Second, there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of FRCA by individual actions of a scale comparable to the potential enforcement by way of class action."); *Shanta Enter.*, 2009 WL 2020781, at *6 ("Where statutory damages may be $100 to $1000, how many individuals will spend $350 to file a federal action, expend time and effort pursuing the case, and risk *owing* costs to the defendant? Few.") (citing *Cicilline*, 542 F. Supp. 2d at 840 ("[F]or most potential class members, there are no actual damages and the recovery would be tiny relative to the expense of litigation on an individual basis.")).

Further, at least one district court has specifically addressed and distinguished two Florida district court opinions which found individual FACTA claims superior to class treatment. *Keller*, 2011 WL 1085976, at *10-11. In *Keller*, the court distinguished and rejected the reasoning behind two Southern District of Florida opinions – each of which had denied class certification for FACTA claims on superiority grounds. *Keller*, 2011 WL 1085976, at *10-11. In both *Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693 (S.D. Fla. 2009) and *Ehren v. Moon, Inc.*, No. 09-cv-21222, 2010 WL 5014712 (S.D. Fla. Dec. 3, 2010) the court utilized reasoning rejected by the Ninth Circuit in *Bateman II* to find that class certification would violate the defendant's due process rights because the potential damage award would be disproportionate to the actual harm suffered and could potentially "annihilate" the defendant economically.    In

*Keller*, the court declined to extend the case upon which both *Leysoto* and *Ehren* rely– *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003). In doing so, the *Keller* court noted that the relevant portion of *London* was "clearly dicta." *Keller*, 2011 WL 1085976, at *11. The *Keller* court further distinguished *London,* and discredited reliance upon it in FACTA cases in which the plaintiff only seeks statutory damages, by highlighting the fact that the damages in *London* were not based upon a *statutory* damages provision. *Id.* Lastly, the *Keller* court reasoned that even if proportionality of damages is properly considerable - *Leysoto* is further distinguishable because the potential class damages "were between $4.6 million and $46 million, even though the record reflected that ... the [d]efendant's net worth [was] approximately $40,000[.]" *Id.* Lastly, the *Keller* court distinguished *Ehren* because the class certification arose in the context of a default judgment. *Id.* Assuming arguendo that consideration of the proportionality of the damages is properly considered – a contention with which Plaintiff respectfully disagrees - any reliance Defendant places upon *Leysoto* or *Ehren* in this case, where Defendant has neither disclosed nor produced any *evidence* as to its net worth, is misplaced.

Regarding manageability, the Class is comprised of consumers asserting a federal statutory claim. Plaintiff seeks only statutory damages and seeks to represent a class that includes only members who are potentially entitled to statutory damages; specifically excluded from the class Plaintiff seeks to represent are those individuals who suffered actual monetary damages as a result of Defendant's noncompliance with FACTA. There is no interstate choice of law problem, or other issues necessitating subclasses or bifurcation. As detailed above, the liability questions are common and readily capable of being resolved on a class-wide basis. In particular, questions of law pertaining to "willful" violations under FACTA are most fairly and

Case 3:10-cv-00841-RBD-MCR   Document 31   Filed 06/15/11   Page 24 of 26 PageID 1550


efficiently resolved through a class action.   Further, Plaintiff knows of no other individual actions against Defendant that are pending.   *See Keller*, 2011 WL 1085976, at *12.

Accordingly, a class action is both manageable and manifestly superior to the litigation of these claims in individual civil actions.

## III.   SUGGESTED MEANS OF PROVIDING AND DEFRAYING COSTS OF NOTICE

M.D. Fla. Local Rule 4.04(b) provides that, where maintenance of a class action is sought pursuant to Fed. R. Civ. P. 23(b)(3), the class certification motion should suggest a means of providing, and defraying the cost of, the notice required by Fed. R. Civ. P. 23(c)(2).   Plaintiff hereby suggests that notice may be accomplished in this matter by a combination of some or all of:   (a) publication of notice in the Jacksonville Times-Union newspaper; (b) publication of notice at the cash registers within the Defendant's store; and (c) publication of notice via the internet, including social media.

While a significant number of class members exist, the record facts show that Defendant operates a single, albeit very busy, restaurant in Jacksonville.   Publication of notice within the Jacksonville Times-Union will provide coverage within the area likely to contain many, if not all, of the class members.   Such publication will also be relatively inexpensive.   Publication at the Defendant's business, at their cash registers, will cover that portion of the class who are repeat customers.   This notice can be effectuated at little to no cost.   Publication via the internet, including electronic social media, would similarly cover a significant portion of the proposed class at little to no cost.   Inasmuch as Defendant regularly solicits customer contact information, the Defendant has the means and information necessary to contact those potential members of the class who have registered via the Defendant's online survey.   *See* Calloway Dep. 28:25, 29:1-15; Exhibit 5.

IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully moves for this Court's order:

(1)   Granting class certification under Fed. R. Civ. P. 23(a) and 23(b)(3) on behalf of the following class:

(a)   All consumers to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, on which Defendant printed more than the last five digits of the consumer's credit card or debit card number; and/or

(b)   All consumers to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after June 3, 2008, on which Defendant printed the expiration date of the consumer's credit card.

(c)   Said class excludes anyone who has suffered actual damages as a result of Defendant's actions, any entities who are not "consumers" or "individuals" as defined by 15 U.S.C. §§ 1681n(a)(1)(A) and 1681a(c), anyone who has had a similar claim previously adjudicated or resolved, officers and directors and employees and agents of the Defendant, judicial officers of the United States and counsel for the parties in this action;

(2)   Designating Jeremiah Bush as class representative of a Rule 23(b)(3) above-defined class; and

(3)   Designating attorneys Michael L. Duncan and R. Bruce Carlson class counsel for the above-defined class.

*Respectfully submitted,*

Michael L. Duncan
Florida Bar No. 50946
Jamie W. Olinto
Florida Bar No. 70339
**Volpe, Bajalia, Wickes, Rogerson & Wachs**
501 Riverside Avenue, 7th Floor
Jacksonville, FL 32202
(904) 355-1700 (phone)
(904) 355-1797 (facsimile)

- and -

R. Bruce Carlson (*pro hac vice pending*)
Carlson Lynch Ltd.
231 Melville Lane
P.O. Box 367
Sewickley, Pennsylvania 15143-1821
(412)749-1677 (phone)
(412)749-1686 (facsimile)

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF on this 15th day of June, 2011 on all counsel or parties of record on the service list.

Michael L. Duncan

Service List:

Lee S. Goldstein
990 Hammond Drive, Suite 990
Atlanta, Georgia 30328

Richard J. Plotkin
Lee S. Haramis
50 North Laura Street, Suite 1100
Jacksonville, Florida 32202