# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JEREMIAH BUSH, individually
and on behalf of all other similarly
situated,

        Plaintiff,

vs.                                                            Case No. 3:10-cv-841-J-37MCR

CALLOWAY CONSOLIDATED GROUP
RIVER CITY, INC., a Florida Corporation,
d/b/a FIVE GUYS FAMOUS BURGER &
FRIES,

        Defendant.

_____

## ORDER

This cause is before the Court on the following:

1)      Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law (Doc. No. 31) ("Motion"), filed on June 15, 2011;

2)      Plaintiff's Notice of Filing Deposition Transcript Supporting Certification Motion (Doc. No. 29), filed on June 15, 2011;

3)      Plaintiff's Notice of Filing Deposition Transcript of Walt Davis Supporting Class Certification Motion (Doc. No. 30), filed on June 15, 2011;

4)      Defendant's Response to Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law (Doc. No. 42) ("Response"), filed on August 4, 2011; and

5)      Plaintiff's Reply Supporting Motion for Class Certification (Doc. No. 47) ("Reply"), filed on August 31, 2011.

**BACKGROUND**

### A.    Procedural History

Jeremiah Bush ("Bush") brings this putative class action against defendant Calloway Consolidated Group River City, Inc. d/b/a Five Guys Famous Burger & Fries ("Calloway") under the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g).  On June 15, 2011, Bush moved for class certification under Federal Rule of Civil Procedure ("Rule") 23. (Doc. No. 31.)   After a series of extensions, Calloway filed its Response opposing class certification (Doc. No. 42) on August 4, 2011, and  Bush filed a Reply on August 31, 2011 (Doc. No. 47).   The Court having heard oral argument on December 14, 2012, the Motion is now ripe for disposition. (Doc. No. 49).

### B.    FACTA

On December 4, 2003, in an effort to combat identity theft, Congress enacted FACTA, which provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or expiration date upon any receipt provided to the cardholder at the point of sale [("POS")] or transaction."  15 U.S.C. § 1681c(g)(1). The statute became effective on December 4, 2004 for any credit card receipt printing machines put into use after January 1, 2005.  *See id.*  For those machines that were already in use prior to January 1, 2005, the statute had a two-year grace period, requiring those machines to be brought into compliance (or taken out of service) on or before December 4, 2006.  *See id.*  "A merchant violates FACTA if he provides a customer with a printed receipt containing a non-truncated credit card number or expiration date."  *Engel v. Scully & Scully, Inc.*, No. 10 Civ. 3167, 2011 WL 4091468, at *5 (S.D.N.Y. Sept. 14, 2011).   It generally applies regardless of whether the receipt

2

given to a patron bears the phrase "Merchant Copy," although it does not apply to handwritten receipts.  *See id.*

FACTA imposes civil liability for willful[1] noncompliance in the amount of "any actual damages sustained by the consumer as a result of the failure **or** damages of not less than $100 and not more than $1,000."[2]   15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Additionally, FACTA allows prevailing parties to recover attorney's fees and costs and "such amount of punitive damages as the court may allow."  15 U.S.C. § 1682n(a)(2)-(3).

## C.    Factual Background

Calloway is a wholly-owned subsidiary of Calloway Consolidated Group, Inc.  (Doc. No. 31, p. 2.)  It owns and operates a Five Guys Burger and Fries franchise located at 13249 City Square Drive, Space 101, River City Marketplace, Jacksonville, Florida ("River City Five Guys" or "River City").  (*Id.*)  When Calloway opened the River City Five Guys in April 2007, it enlisted Data Systems, Inc. d/b/a Retail Data Systems ("RDS") to install a computerized POS system.  (*Id.*)  A POS system is a device retailers use to swipe customers' credit cards.  (Doc. No. 42, p. 5.)  RDS is the sole vendor for POS systems for Five Guys restaurants nationwide.  (*Id.*)  RDS installs the POS systems when the restaurants initially open for business, and continuously provides maintenance and updates to the systems.  Additionally, it installs "Epsilon," the software required to run the system on the POS system.  (*Id.*)

---

[1] FACTA also imposes liability for negligent noncompliance.  However, Bush has not stated a claim for a negligent violation of FACTA.

[2]    Bush does not allege he sustained any actual damages, and he seeks only statutory damages.  "Statutory damages under 15 U.S.C. § 1681n are available only for willful violations of FACTA."  *Engel*, 2011 WL 4091468, at *6.

In 2007, a programmer installing Epsilon into a POS system had to manually "check a box" on the software to ensure that the expiration date would not print on the customers' receipts.  (*See* Doc No. 30-1, Walt Davis Deposition ("Davis Dep."), 65:7-19.)  In March 2008, pursuant to FACTA, the Epsilon software was updated so that the credit card expiration date was automatically truncated without the programmer "checking a box" during installation.  (*Id.* at 66:8-14.)  On December 23, 2008, however, when RDS reloaded the software onto Calloway's POS system,[3] the programmer inadvertently uploaded the older version of the software.  (*See id.* at 69:4-13.)  Because he assumed he was uploading the newer version of the software that automatically masked the expiration date, the programmer did not "check the box" to ensure the truncation of the credit card expiration date at that time.  (*Id.* at 66:23-67:6.)

On June 28, 2010, Bush visited the River City Five Guys.  (Doc. No. 42, p. 6.)  He used an American Express card to pay for his meal, and received a credit card receipt showing the card's expiration date.  (*Id.*; Doc. No. 31-1, Ex. A.)  He ultimately filed this lawsuit on September 14, 2010, seeking statutory damages, punitive damages, attorney's fees, costs, and "other and further relief on behalf of all persons to whom Defendant provided a receipt not in compliance with FACTA . . . ."  (Doc. No. 42, pp. 6-7.)  It is uncontested that the expiration date was included on River City Five Guys's receipts from approximately December 23, 2008 until Calloway received notice of this lawsuit.  (*See* Doc. No. 29-1, Christopher Hughes Calloway Deposition ("Calloway Dep.")*,* 17:18-21; 59:6-11.)  Bush asks this Court for certification of a class of persons consisting of:

---

[3]  Calloway changed its credit card processor around that time, which required RDS to reinstall the Epsilon software on the POS system.  (*See* Davis Dep., 101:1-21.)

All consumers, expressly excluding any judge and judicial officer and judicial staff member employed by or assigned to the United States District Court for the Middle District of Florida and all of their immediate family members and persons related to them as defined in 28 U.S.C. § 455(b), to whom Defendant CALLOWAY CONSOLIDATED GROUP RIVER CITY, INC., doing business as FIVE GUYS FAMOUS BURGER & FRIES, from its restaurant located at 13249 City Square Drive, Space 101, River City Marketplace, Jacksonville, Florida, provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after June 3, 2008, on which Defendant CALLOWAY CONSOLIDATED GROUP RIVER CITY, INC., doing business as FIVE GUYS FAMOUS BURGER & FRIES, printed the expiration date of the consumer's credit card.

## APPLICABLE STANDARD

"Rule 23 establishes a legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003). Additionally, "courts have universally recognized that the first essential ingredient to class treatment is the ascertainability of the class." *Grimes v. Rave Motion Pictures Birmingham,* 264 F.R.D. 659, 662-64 (N.D. Ala. 2010). (citations omitted); *see also Keller v. Macon Cnty. Greyhound Park, Inc.,* No. 3:07-cv-1098, 2011 WL 1085976, at *3 (M.D. Ala. Mar. 24, 2011) ("The Second Circuit Court of Appeals has referred to ascertainability as an "implied requirement" for class certification." (citing *In re Initial Public Offerings Sec. Litig.,* 471 F.3d 24, 30 (2d Cir. 2006)). After a court determines that a class is ascertainable, it then considers whether the Rule 23 factors are met.

Under Rule 23(a), "[a] class may be formed and any person or group of people may represent the class in litigation if (1) the class is so numerous the joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the named representative parties are typical of the claims or defenses of the class; and (4) the named representative parties will fairly and adequately protect the

5

interests of the class." *Keller*, 2011 WL 1085976, at *2 (citing Fed. R. Civ. P. 23(a)). The plaintiff bears the burden of proof, and failure to prove any Rule 23(a)'s factors precludes class certification. *See Valley Drug,* 350 F.3d at 1188 (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615-18 (1997)).

The "class must also fit within at least one of the types of class actions recognized in Rule 23(b)." *Grimes,* 264 F.R.D. at 664. Under Rule 23(b)(3), a class action may be maintained if Rule 23(a) is satisfied and if "[t]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"A district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citation and internal quotation marks omitted); *see Wal-mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Although a district court may not resolve the merits of a case when ruling on a Rule 23 motion, *see Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1337 (11th Cir. 2006), the court may, and sometimes must, inquire into the merits in order to determine whether the requirements of Rule 23 have been satisfied, *see Valley Drug*, 350 F.3d at 1188 n.15 (11th Cir. 2003)." *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 10-15837, 2012 WL 205800, at *1 (11th Cir. Jan. 25, 2012) (citing *Wal-Mart*, 131 S. Ct. at 2551-52 ("[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question . . . [, which] generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." (quotation marks and citations omitted)); *Huff v.*

6

*N.D. Cass Co. of Ala.*, 485 F.2d 710, 714 (5th Cir. 1973) (en banc) ("It is inescapable that in some cases there will be overlap between the demands of [Rule] 23(a) and (b) and the question of whether [a] plaintiff can succeed on the merits.")[4] (additional citations omitted)). However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Engel,* 2011 WL 4091468, at *7 (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 546 F.3d 196, 201-02 (2d Cir. 2008)); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of a class action without first satisfying the requirements for it."); *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996) (*Eisen* "stands for the unremarkable proposition that the strength of a plaintiff's claim should not affect the certification decision."); *Reese v. Miami-Dade Cnty.*, 209 F.R.D. 231, 232 (S.D. Fla. 2002) ("Class certification is strictly a procedural matter and the merits of the claims at stake are not considered when determining the propriety of the class action vehicle."). The Court may consider any evidence submitted that bears on the question of certification in order to determine whether certification is appropriate. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693, 696 (S.D. Fla. 2009).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

**DISCUSSION**

A.    **Ascertainability**

"Class members need not actually be ascertained prior to certification, but each individual's class membership must be ascertainable at some stage in the proceeding." *Engel,* 2011 WL 4091468, at *8 (citing *In re Fosamax Prod. Liab. Litig.*, 248 F.R.D. 389, 395-96 (S.D.N.Y. 2008)).    A class may not be "amorphous or imprecise," and must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."   *Keller,* 2011 WL 1085976, at *3; *see Soutter v. Equifax Info. Servs., LLC,* No. 3:10cv107, 2011 WL 1226025, at *5 (E.D. Va. Mar. 30, 2011) (citations omitted); *see Shurland v. Bacci Café & Pizzeria on Ogden, Inc.,* 271 F.R.D. 139, 146 (N.D. Ill. 2010) (*Shurland II)* ("A class is sufficiently definite if its members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." (internal quotation marks and citation omitted)).

Relying on *Grimes,* which is also a FACTA class certification case, Calloway argues that the class is not ascertainable because "there is no means with which to identify any member of the putative class."  (Doc. No. 42, p. 11); *see Grimes,* 264 F.R.D. at 665.  Mr. Calloway attests that the River City Five Guys does "not maintain nor has it ever maintained a database or any paper record that preserves information sufficient to allow identification of any person who was provided a credit card receipt at River City from the day the restaurant opened through the present." (Doc. No. 41-2, Christopher Hughes Calloway Affidavit ("Calloway Aff.") ¶ 9.)

In *Grimes,* the plaintiff brought suit against Rave Motion Pictures Birmingham, L.L.C.

("Rave")[5], which owned and operated movie theaters in twelve states, including Alabama. *Grimes,* 264 F.R.D. at 662.  She alleged that Rave had issued her a credit card receipt containing more than the last five digits of her credit card number on two different occasions. *Id*.  She proposed a class notice that contained, in pertinent part, the following information:

> All persons to whom the Defendants provided an electronically printed purchase receipt at the point of sale or transaction, in a transaction occurring after December 4, 2006, which receipt displayed more than the last five digits of the person's credit and/or debit card number; said class seeks only statutorily defined damages as set out in 15 U.S.C. § 1681; said class excludes anyone who has incurred actual damages as defined in said statute; said class excludes anyone who has filed a similar individual action against the Defendants, judicial officers of the United States and State of Alabama and counsel for the parties in this action.

*Id.* at 664 (citations omitted).  The *Grimes* court found numerous insufficiencies with regard to the ascertainability of the class as defined.  It found that "Grimes's putative class can never be ascertained without first conducting an individualized inquiry into the merits of each putative member's claim." *Id.* at 665.  Because Rave did not keep copies of their receipts, the court found there was "no way to determine who was or was not issued a FACTA non-compliant receipt by Rave, except those issued to Grimes, or to unknown and virtually unknowable persons who may have received and for some reason preserved them." *Id.*

Although in this case it is undisputed that Calloway, like Rave, did not maintain copies of customer receipts, there are a number of distinctions between this case and *Grimes.* (*See* Calloway Aff. ¶ 7.)  For example, the *Grimes* court found it "ominously

---

[5] The plaintiff actually brought suit against multiple defendants, but according to the court, the additional named defendants were not separate entities. *See Grimes,* 264 F.R.D. at 662 ("Rave, in the 4 different manifestations named as defendants . . . .")

strange that despite the publicity that has surrounded this case, no person has intervened or sought to join Grimes as a plaintiff." *Grimes,* 264 F.R.D. at 665. It pondered, "Can purchased publicity after class certification accomplish what free publicity has not?" *Id.* In the instant case, the Court is aware of no such publicity, and the record does not indicate that this lawsuit has been advertised in any way. The first time that most, if not all, potential plaintiffs will be made aware of this action will be through the notification that Rule 23 mandates.

Next, the *Grimes* court ultimately concluded that the class was "unascertainable because neither Grimes nor Rave [could] provide a way to determine the number or identity of class members," advising that "[g]uess work is not a substitute for logic and common sense." *Id.* at 668. Here, Bush proposes two means by which individual class members may be ascertained. First, class members may be identified by presenting a receipt from the River City Five Guys printed at some point from approximately December 23, 2008 to September 14, 2010, when the restaurant admits its POS system was printing customer receipts containing the expiration date that exhibits an expiration date. (Doc. No. 53, pp. 3-4.) Second, because it is unlikely that a substantial number of people still possess their receipts from two to four years ago, Bush proposes that potential class members may be identified by presenting a copy of a bank statement or credit card statement showing a credit card transaction at the River City Five Guys from the subject time period.

Unlike the defendants in *Grimes,* which owned movie theaters in twelve states and twenty-seven cities, it is uncontroverted that in this case, the River City Five Guys is the only Calloway owned establishment that issued non-compliant receipts. Moreover, Mr. Calloway's deposition testimony affirms that the River City Five Guys provided customers

10

with copies of their receipts "as a routine." (Calloway Dep., 27:22-25.) Although Calloway does not maintain a merchant copy of customer receipts, Bush has presented evidence of a log listing the receipts issued during the period the River City Fives Guys was not in compliance with FACTA's truncation requirements. Based on very similar facts, another district court certified a FACTA class, finding that because "[t]he log includes partial credit card information for each transaction, the date it occurred, and the amount of the transaction . . . [the plaintiff would be able to] verify whether any individual who respond to class notice is in fact a member of the class." *Shurland II,* 271 F.R.D. at 147.

In addition to the credit card logs, Calloway also may be able to ascertain class members by way of its online database. Although Mr. Calloway states in his affidavit that the River City Five Guys does not maintain any databases from which it could identify whether someone was provided with a credit card receipt, in his deposition testimony he explains that the bottom of each River City receipt contained the phrase "Don't throw away your receipt" because they encouraged customers to fill out a survey on the Five Guys website. He explained that customers who completed the surveys could win gift cards, and that the information they provided in the survey included "different things that [could] help from a marketing and location standpoint." (*Compare* Calloway Aff., ¶ 7 *with* Calloway Dep. 28:25-29:25.) This information includes such categories as the survey participant's address, which may also prove helpful for identifying class members.

Finally, this Court agrees with the *Keller* court's reasoning that "for the few individuals who may have been unfortunate enough to have suffered actual damages[6]

---

[6] The Court notes that those individuals who suffered "actual damages" would be excluded from the class because Bush's class action seeks only statutory damages. It is important to exclude anyone who suffered actual damages because if such person remains

caused by the printing of FACTA non-compliant receipts, those individuals may be identified easily and excluded from the class." *Keller,* 2011 WL 1085976, at *3.  Nearly two years has passed since Calloway rectified the expiration date printing issue.  Anyone who suffered from identity fraud would likely be aware of it by now and would have the opportunity to opt out of this class action and pursue their individual claims.  In short, this Court does not harbor the *Grimes* court's concern that there is "no logical or fair way to determine if a class exists, much less who is in it." *Grimes,* 264 F.R.D. at 666.  The Court finds that the class membership is ascertainable at this time.

### B.    Rule 23(a)

#### 1.    Rule 23(a)(1) - Numerosity

The first requirement under Rule 23(a) is that the putative class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40." *Vega*, 564 F.3d at 1266; *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601, 605 (S.D. Fla. 2002).  In ascertaining class size, the court "may rely on common sense assumptions or reasonable inferences based on known facts." *Shurland v. Bacci Café Pizzeria on Ogden, Inc.*, 259 F.R.D. 151,158 (N.D. Ill. 2009) (*Shurland I*) (internal quotation marks and citations omitted).

It is undisputed that there were "thousands" of non-compliant receipts printed in this case.  (*See e.g.,* Calloway Dep. 18:10-15.)  Bush alleges that as many as 72,000 transactions occurred from approximately December 23, 2008 until September 14, 2010.

---

part of the class and ultimately collects statutory damages pursuant to a favorable outcome, he or she would be prohibited from later seeking the amount of any actual damages suffered.  *See Keller*, 2011 WL 1085076, at *3-4.

(Doc. No. 31, p. 9 (citing Calloway Dep. 44:25, 45:1-16, 71:18, 79:3-18, 82:18-25, 83:1-5).)

To quote the *Keller* court, "Although it is very likely that any given individual may have been

the recipient of more than one of these [72,000] receipts, it is extremely unlikely that fewer

than 40 individuals account for all [72,000].  It is equally unlikely that of all the individuals

who account for the [72,000] receipts, there are fewer than 40 who have suffered no actual

damages."  *Keller,* 2011 WL 1085976, at *5.  Based on the current record, "[t]he proposed

number of class members on these facts easily exceeds the minimum threshold recognized

by the Eleventh Circuit."  *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 672 (S.D.

Fla. 2011).

## 2.    Rules 23(a)(2) - Commonality

To satisfy the commonality factor, a plaintiff must show "questions of law or fact

common to the class" exist.  Fed. R. Civ. P. 23(a)(2); *Wal-Mart*, 131 S.Ct. at 2550-51. "[A]t

least one issue common to all members of the class" must exist.  *In re Checking*, 275

F.R.D. at 673.  Commonality, "does not require that all of the questions of law or fact raised

by the case be common to all plaintiffs," but a class action "must involve issues that are

susceptible to class-wide proof."  *Id.*; *Cooper v. S. Co.*, 390 F.3d 695, 719 (11th Cir. 2004),

*overruled in part of other grounds by Ash v. Tyson Foods, Inc.*, 564 U.S. 454, 457-58

(2006).  "The commonality element is generally satisfied when a plaintiff alleges that

'[d]efendants have engaged in a standardized course of conduct that affects all class

members.' "  *In re Checking*, 275 F.R.D. at 673 (citing *In re Terazosin Hydrochloride*, 220

F.R.D. 672, 687 (S.D. Fla. 2004); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D.

Fla. 2004); *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991)

This factor appears to be undisputed, as Calloway does not address it in its

Response (Doc. No. 42).  Though the Eleventh Circuit has yet to examine this issue, courts considering whether to certify a FACTA class action on facts similar to those presented here have routinely found commonality.  *See e.g., Hanlon v. Palace Entm't Holdings, LLC,* No. 11-987, 2012 WL 27461 (W.D. Pa. Jan. 3, 2012) ("This case could be a textbook example of commonality and typicality.  The relevant facts – that [the plaintiff] received a receipt at the point of sale containing his expiration date – are straightforward and common to the class sought to be certified in every material way, particularly because the class excludes victims of identity theft."); *Engel,* 2011 WL 4091468, at *9 ("Factually, the claims depend upon the common contention that the defendant had a regular business practice of providing non-truncated receipts in violation of FACTA.  Also, because the complaint does not state a claim for negligent violation of FACTA, 'the question of whether Defendant acted willfully is central both to Plaintiff's individual claim and to the claims of the class as a whole.' "  (quoting *Shurland I,* 259 F.R.D. at 159)); *see also Keller,* 2011 WL 1085976, at *5-6.  In general, "[c]ommonality may be satisfied even with some factual variations in the class members' claims."  *Green v. FedEx Nat., LTL, Inc.,* 272 F.R.D. 611, 614 (M.D. Fla. 2011).

Here, Bush points to several common issues of law or fact that will be at the center of the dispute.  These issues include whether Calloway's conduct of providing Bush and the members of the class with a sales receipt that contained more than the last five digits of the credit card or debit card number and/or the expiration date violated 15 U.S.C. § 1681 *et seq.*, whether Calloway's conduct was "willful,"[7] and whether Bush and members of the

---

[7]  A violation is "willful" for the purposes of FACTA if the defendant violates its terms with knowledge or reckless disregard for the law.  *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) (citing *Safeco Ins. Co. of Am. v. Burr,* 551 U.S.

class are entitled to statutory damages, punitive damages, costs, and/or attorneys' fees for Calloway's acts and conduct.  (Doc. No. 31, p. 12); *see Keller*, 2011 1085976, at *6 (citing *Pezl v. Amore Mio, Inc.*, 259 F.R.D. 344, 347 (N.D. Ill. 2009) ("finding commonality requirement satisfied for class certification of FACTA case because the "common nucleus of operative fact [was] the printing of receipts in violation of FACTA.")).  The determination of each of these issues may be dispositive to all of the claims against Calloway.

Some issues may also arise regarding whether a bank or credit card statement showing a transaction during the time period at issue is sufficient to warrant statutory damages under FACTA.  *See Keller,* 2011 WL 1085976, at *6 (finding that a common legal issue would likely be whether FACTA violations can be proved based solely on the merchant copies of the post of sale receipts, anticipating that many of the putative class members would have lost or disposed of the customer copies of the receipts by the time of trial).  This evidentiary issue and others like it will be common to many, if not most, of the members of the class.  Accordingly, the Court finds the current record sufficient to satisfy the second 23(a) factor.

### 3.    Rule 23(a)(3) - Typicality

A party seeking certification must also demonstrate that "the named plaintiff's claim is typical of the claims of the rest of the class."  *Green,* 272 F.R.D. at 615.  Typicality and commonality are related, but "commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class."  *Vega,* 564 F.3d at 1275.  To be typical, "[a] class representative must possess the same interest and suffer the same injury as the class members . . . [T]ypicality

47 (2007)).

measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Id.* (citing Fed. R. Civ. P. 23(a)(3); *Busby v. JRHBW Realty, Inc.* 513 F.3d 1314, 1322 (11th Cir. 2008)). "The typicality requirement may be satisfied despite substantial factual differences . . . when there is a 'strong similarity of legal theories.' " Calloway does not address this Rule 23 factor in its Response (Doc. No. 42).

Bush's proposed class consists of individuals who were all subjected to the same conduct, and each class member's claim would be based on the same legal theory and governed by the same law.  On this basis alone courts have found typicality exists. *See Shurland I,* 259 F.R.D. at 159.  As noted, FACTA prohibits any person that accepts credit or debit cards for the transaction of business from printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g).  The Fair Credit Reporting Act ("FCRA") provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer."  15 U.S.C. § 1681n; *Pelz,* 259 F.R.D. at 347 ("FACTA does not contain a separate provision establishing a private right of action; the right to sue is granted under the FCRA.")

Moreover, although Bush occasionally used the credit card that he used at the River City Five Guys "for business purposes," Calloway does not contend that the card belonged to a separate business entity, rather than Bush, as the "consumer."  *Cf. Keller,* 2011 WL 1085976, at *7 ("It is undisputed that [one of the named representative plaintiffs] made his purchases on a business credit card . . . and that those purchases were business expenses. . . . Even though the name of the business card is that of an individual, the credit

card belonged to the business, and the purchases were made on behalf of the business. Therefore, [that plaintiff] is not entitled to relief under the FCRA because the 'consumer in this case was the [law firm] and not the [individual plaintiff] himself." (internal quotation marks and citations omitted)).[8] Further, Calloway does offer any other defenses that would be unique to Bush.  Therefore, the Court finds Bush's claims have a sufficient nexus to those of the class at large and are "typical of the claims or defenses of the class." *Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 637-38 (11th Cir. 2010).  The typicality factor is satisfied.

### 4.      Rules 23(a)(4) - Adequacy

This final factor of Rule 23(a) requires the party seeking certification to demonstrate that he will "fairly and adequately protect the interests of the class. The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625  (1997) (citations omitted).  Determination of adequacy requires consideration of two questions: "(1) Do either the named plaintiffs or their counsel have any conflicts of interest with other class members; and (2) Will the named plaintiffs and their counsel prosecute the action vigorously on behalf of their class?"  *In re Checking,* 2011 WL 3158998, at *6.

Calloway asserts primarily two arguments to prove Bush would not adequately represent the class.   Both are unavailing.   First, it contends that Bush would not

---

[8]  The Court notes that in *Shurland I,* the district court for the Northern District of Illinois found that "FACTA's protections . . . extend to holders of both business and consumer credit cards."  *Shurland I,* 259 F.R.D. at 160.  The Court need not determine at this time whether FACTA applies to transactions involving a business credit card because the current record indicates that Bush's credit card was his personal card.  Should Calloway have evidence that indicates otherwise, it may raise that issue at a later stage of the litigation.

competently represent the class because he has other litigation pending and he "does not know the current status of any of his other cases."  (Doc. No. 42, p. 12 (citing Jeremiah Bush Deposition ("Bush Dep."), 15:1, 19; 16:1, 22).)  Calloway offers no legal support for this argument.

Bush has already sat for a deposition in this case.  (*See id.*)  He has represented to the Court that he is committed to its progression and ultimate outcome.  Additionally, he has "consulted with  [his attorneys] on multiple occasions to discuss issues in the case, review documents, prepare and sign answers to interrogatories, and to prepare for his deposition."  (Doc. No. 31, p. 15.)  He maintains that he is "acutely aware of the financial obligations and costs of this litigation, and has stated his readiness to pay appropriate costs herein."  (*Id.*)  The Court finds these assertions sufficient to show that Bush is committed to and will adequately represent the class.

Calloway's second argument is that "Plaintiff was thinking about himself" when he filed this lawsuit, and therefore will not zealously represent the class.  (*See* Doc. No. 42, p. 17.)  It seems to maintain that Bush had some obligation to report the FACTA violation to it immediately.  (*Id.*)  Calloway offers no support for this argument either.  Contrary to this contention, the *Keller* court found that the plaintiff's decision not to notify the defendant of the FACTA violation did not "implicate a duty to [defendant] or the other class members who would not have been provided such receipts had [the defendant] detected the problem earlier."  *Keller,* 2011 WL 1085976, at *8.  Bush's "silence does not create any conflict of interest, much less any **substantial** conflict of interest."  *Id.* (emphasis in original) (citing *Busby*, 513 F.3d at 1523); *see also Valley Drug Co.*, 350 F.3d at 1190;  *Ward v. Dixie Nat. Life Ins. Co.,* 595 F.3d 164, 180 (4th Cir. 2010)("For a conflict of interest to defeat the

adequacy requirement, that conflict must be fundamental." (internal quotation marks and citation omitted)).

Calloway does not contest Bush's counsels' ability to competently represent a class action.  There is no indication that they have any interests antagonistic to putative class members; they have adequately represented Bush in the proceedings up to this point, and they have provided the Court with a "firm resume" that includes a substantial amount of prior experience representing class actions.  (Doc. No. 31-3.)  Thus, the Court finds Bush and his counsel adequate to represent the interests of the class.  *See Engel,* 2011 WL 4091468, at *11; *see also In re Checking*, 2011 WL 3158998, at *6.

### C.     Rule 23(b)

In order to be certified as a class action, the class must satisfy at least one of the class categories defined in Rule 23(b).  Bush moves for certification under Rule 23(b)(3).  This provision was "framed for situations where class-action treatment is not as clearly called for."  *Wal-Mart*, 131 S. Ct. at 2558 (citation omitted).  It was intended to capture "cases in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results."  *Amchem,* 531 U.S. at 615.  To qualify under this provision, the class must meet two requirements: (1) "the questions of law or fact common to the class members predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *Wal-Mart*, 131 S. Ct. at 2558; *Babineau v. Fed. Exp. Corp*., 576 F.3d 1183 (11th Cir. 2009).

### 1.     Predominance

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability on every class member's entitlement to monetary relief." *Babineau*, 576 F.3d at 1191 (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004)). "The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law, . . . to assess the degree to which resolution of the classwide issues will further each individual class member's claims against the defendant." *Id.* (internal quotation marks and citations omitted). As addressed above in the commonality inquiry of Rule 23(a)(2), there are common questions of fact and law applicable to the class. "However, 'the predominance criterion is far more demanding [than Rule 23(a)(2)'s commonality requirement].' " *Keller*, 2011 WL 1085976, at *9 (alteration in original) (citing *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (quoting *Amchem,* 521 U.S. at 623-24)).

Despite the heightened standard under Rule 23(b)(3), it is clear that "[t]he core legal and factual issues in this action do not require individualized determination, but can be resolved through generalized proof applicable to the class." *Engel*, 2011 WL 4091468, at *11. For example, the resolution of whether Calloway's noncompliance with FACTA was "willful" applies to all class members' claims. *See Shurland I*, 259 F.R.D. at 159 ("The question of whether that conduct was willful (and consequently whether Defendant is liable) similarly predominates over other individual issues and, indeed, will likely prove the principal common question in this case, given that Defendant concedes that it violated the Act's truncation requirements."). Additionally, Bush seeks only statutory damages, likely obviating the need for individualized damages determinations. *See Engel*, 2011 WL 4091468, at *11; *Stillmock v. Weis Mkts., Inc.,* 385 F. App'x 267, 273 (4th Cir. 2010)

("[W]here, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3).") The Court finds that Bush has satisfied this first component of Rule 23(b)(3).

### 2. Superiority

Bush must next show that a class action is superior to other methods of adjudication of this controversy. *See* Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) includes a "nonexhaustive" list of factors pertinent to a court's 'close look' at the . . . superiority criteria." *Amchem*, 521 U.S. at 615-16. These include:

> (A) The class members' interests in individually controlling the prosecution or defense of separate actions; (B) The extent and nature of any litigation concerning the controversy already begun by or against class members; (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) The likely difficulties in managing a class action.

*Id.* (citing Fed. R. Civ. P. 23(b)(3)(A)-(D)). Courts routinely find class resolution superior in consumer protection actions, including those brought pursuant to FACTA. *Keller*, 2011 WL 1086976, at *10; *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 216 (N.D. Ill. 2008) ("FACTA claims are especially well-suited to resolution in a class action where, as here, potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."); *see also Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005) (finding class treatment superior where plaintiff sought damages pursuant to FCRA). A class action is generally considered superior because each individual class member has only a "small claim" ranging from one hundred to one thousand dollars in statutory damages. *See Engel*, 2011 4091468, at *11. "The policy at the very core of the class

21

action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. 591.

Calloway relies primarily on the Southern District of Florida's *Leysoto*, issued in 2009, for the proposition that a class action is not superior for FACTA claims because the defendant's potential liability could be "enormous and completely out of proportion to any harm suffered by the plaintiff." (Doc. No. 42, p. 15 (citing *Leysoto*, 255 F.R.D. at 697).) When the *Leysoto* court considered the issue of FACTA certification, it was a "matter of first impression within this Circuit." *Leysoto*, 255 F.R.D. at 696. Addressing the "superiority" issue, it explained, "[I]t is apparent that FACTA certification consistently turns on two issues: (1) whether the amount of potential FACTA class damages is a permissible consideration at the motion to certify stage; and, if so; (2) whether those . . . . potential class damages preclude certification under the superiority requirement of Rule 23(b)(3)." *Id.* at 696-97.

The court noted that at that time, district courts in the Ninth Circuit generally considered "potential FACTA class damages to be a highly probative consideration under Rule 23," but district courts in the Seventh Circuit consistently prohibited consideration of potential class damages in undertaking a Rule 23 analysis. *Id.* at 698 (citing *Saunders v. Trattoria*, 2007 WL 4812287, at *2 (C.D. Cal. 2007); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82, 89-90 (N.D. Ill. 2008)). It ultimately determined that "the first issue is easily resolved in light of Eleventh Circuit precedent. *Id.* at 697. The court examined *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 155 n.5 (11th Cir. 2003), in which the Eleventh Circuit, in dicta, stated:

> However, we also note our doubt as to whether the class certification could meet Rule 23(b)(3)'s superiority requirement. . . . [T]he alleged illegality of the contracts at issue here occurred through the Appellants' failure to follow the requirements of a complex regulatory scheme, subject to different reasonable interpretations. In addition, the plaintiffs suffered no economic harm.
>
> Under such circumstances, even though economic harm is not an element of the Florida common law claim for restitution, it may be required for superiority under the Federal Rules of Civil Procedure [Rule 23]. This is especially likely when, as in the present suit, the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff.

Based on this footnote, the *Leysoto* court determined that "lower courts may consider potential class damages, in conjunction with the plaintiff's actual injury, especially in cases where 'the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff.' " *Leysoto*, 255 F.R.D. at 697. It denied the plaintiff's motion to certify a FACTA class action because "to grant the requested class relief would allow this Plaintiff, and his counsel, to dangle the Sword of Damocles over Defendant, without any showing of actual economic harm." *Id.* Finally, the court explained, "[T]he threat of annihilation associated with certification does not serve the purpose of the legislation, and moreover, is simply unnecessary to effectively enforce the Act and compensate victims of identity theft." *Id.*

Although the Eleventh Circuit has yet to consider whether class actions constitute a "superior" method of adjudication for FACTA disputes, the relevant case law in this Circuit and others has continued to develop since the *Leysoto* decision issued. First, the Court notes significant changes in Ninth Circuit.[9] At least three of the four California district

---

[9] Although Calloway acknowledges the changes in the case law, it still relies on *Leysoto*, and emphasizes that Ninth Circuit decisions are not binding on this Court.

court cases the *Leysoto* court cited for its finding that "[t]he majority of district courts to consider potential FACTA class damages at the motion to certify stage have denied certification for failure to satisfy Rule 23(b)(3)'s superiority requirement" are no longer good law in light of the Ninth Circuit's *Bateman II. Bateman II,* 623 F.3d 708. *See Bateman v. Am. Multi-Cinema, Inc.*, 252 F.R.D. 647 (C.D. Cal. 2008) (*Bateman I*); *Saunders v. Trattoria*, No. Cv 07-1060, 2007 WL 4812287 (C.D. Cal. 2007); *Najarian v. Avis Rent A Car Sys.*, No. cv 07-5882007 WL 4682071 (C.D. Cal.2007).

In *Bateman II,* the Ninth Circuit concluded, among other things, that neither the disproportionality between the potential liability and the actual harm suffered nor the enormity of potential damages justified the district court's denial of class certification in a FACTA case. *Bateman II,* 623 F.3d at 713. Although *Bateman II* is not binding on this Court, it is persuasive authority directly on point. This decision also comports with similar decisions rendered in this and other Circuits. *See Keller*, 2011 WL 1085976, at *9; *Stillmock,* 385 F. App'x 267, 274 (4th Cir. 2010); *Murray v. GMAC Mort. Corp.*, 434 F.3d 948 (7th Cir. 2006); *Arms v. Sogo, Inc.,* No. 08-cv-0244, 2011 WL 1197537, at *8 (E.D. Wis. 2011) ("Since *Murray*, numerous district judges in the Northern District of Illinois have certified class actions in FACTA cases, many of the judges rejecting, under *Murray*, similar annihilation and constitutional arguments."); *Engel*, 2011 WL 4091468, at *11 ("I agree that the class action is a superior method for resolving this controversy, due to the low damages incentive for individual litigation and the consistency of results encouraged by class actions." (footnote omitted)). *But cf. Phren. v. Moon, Inc.*, No. 09-21222-Civ., 2010 WL 5014712, at *2 (S.D. Fla. 2010) ("If class action treatment were applied here, where the complaint contains no indication of any actual damages, the aggregated relief could be

oppressive in consequence and difficult to justify. Certifying a class action in this matter is not superior to other methods of litigation because a class action in this context could raise serious constitutional problems implicating the Defendant's Due Process rights.")

The *Bateman II* court conducted a "statutory analysis" of FACTA. *See Bateman II*, 623 F.3d at 717. Concluding that the district court abused its discretion in considering the proportionality of the potential liability to the actual harm alleged in its Rule 23 superiority analysis, the Ninth Circuit reasoned, in pertinent part:

> Further, we cannot surmise a principled basis for determining when damages are and are not "proportionate" to actual harm. Indeed, one might plausibly argue that a $1000 award, or even a $100 award, for a single violation of FACTA, without any allegation of harm, is not proportionate. But the plain text of the statute makes absolutely clear that, in Congress's judgment, the $100 to $1000 range is proportionate and appropriately compensates the consumer. **That proportionality does not change as more plaintiffs seek relief; indeed, the size of [a defendant's] potential liability expands at exactly the same rate as the class size.**

*Id.* at 719 (emphasis added) (citing *Murray*, 434 F.3d at 954). It then assessed the district court's consideration of the "magnitude of the defendant's liability." *Id.* On this issue, it concluded:

> "[Whether the potential for enormous liability can justify a denial of class certification depends on congressional intent. . . . [We conclude that allowing consideration of the potential enormity of any damages award would undermine the compensatory and deterrent purposes of FACTA. . . . [T]he reason that damages can become enormous under FACTA "does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person," combined with multiple violations of the statute. . . . To limit class availability merely on the basis of "enormous" potential liability that Congress explicitly provided for would subvert congressional intent.

*Id.* at 722 (internal citations omitted). The *Bateman II* court noted, however, that the defendant in that case did not demonstrate that liability would be "ruinous" and "reserved]

judgment as to whether, if [the plaintiff] prevailed] at trial, the district court [would] be entitled to reduce the award if it [was] unconstitutionally excessive." *Id.* at 723. Nevertheless, it concluded that "it is not appropriate to evaluate the excessiveness of the award at this stage of the litigation." *Id.*

Additionally, on April 9, 2009, approximately two months after the Southern District of Florida issued its *Leysoto* decision, the Eleventh Circuit issued the *Harris* opinion, in which it reviewed a district court order declaring the FCRA's statutory damages provision unconstitutionally excessive on its face and as applied to the defendants, in violation of the Fifth Amendment Due Process Clause. *Harris,* 564 F.3d at 1307.[10] The Eleventh Circuit found the merits of the as-applied challenge were not ripe for adjudication, but that the statute was not unconstitutionally vague or excessive on its face. *Id.* at 1307-08. Although merely dicta, the Eleventh Circuit provided some relevant insight to the question of whether a district court should consider potentially excessive damages when it determines whether to satisfy a FACTA class action. The court stated, "At this stage in the proceedings it is impossible to know . . . how many individuals will be included in each class, whether they will prove willfulness, and the size of the ultimate verdicts." *Id.* at 1310. Thus, it held that the district court lacked jurisdiction to consider whether th FCRA's statutory-damages provision is punitive or would yield an unconstitutionally excessive verdict. *Id.* This language is aligned with the Ninth Circuit's reasoning that the appropriate time to consider

---

[10]   As stated elsewhere in this Order, FACTA was enacted as an amendment to the FCRA, and the private right of action and damages provisions applicable to FACTA are founded in the FCRA statutory scheme. *See Harris*, 564 F.3d at 1306-07.

the potential "enormity" of a FACTA damages award is at a later stage of the proceeding.[11]

The Court recognizes Calloway's argument that based on the number of receipts printed during the time period in question, it could be subjected to a minimum award of $7.2 million and a maximum award of over $72 million.  Calloway has not presented evidence to show that such an award would be "ruinous" to its business, although common sense would suggest that even the minimum award could bankrupt many businesses. Nevertheless, based on the current record and the foregoing case law, the Court finds that this issue is better left for resolution at a later juncture.  The Court is aware of its continuing obligation to "define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."  *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001); *see Hamilton v. Hall ex rel. Santa Rosa Cnty., Fla.*, No. 3:10-cv-355, 2011 WL 2161139, at * 1 (N.D. Fla. May 26, 2011) ("[P]articularly during the period before any notice is sent to members of the class, [a class certification order] is inherently tentative." (citing *Falcon*, 457 U.S. at 160)).  Should the potential for prohibitive damages become a more likely possibility, the Court may at that time further assess whether consideration of the implications that "ruinous damages" may have on Calloway as part of Rule 23(b)'s "superiority" factor is appropriate.

At this time, the Court finds that it would be "unduly speculative" to deny class certification based solely on the possibility of a large damages award.  *See Engel*, 2011 WL 4091468, at *11 n.5 (citing *Harris*, 564 F.3d at 1310).   Further, turning back to the Rule

---

[11]   The Court recognizes the oft sighted Ninth Circuit case law noting that class treatment lacks superiority when the damages "shock the conscience."  *See Kline v. Caldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974).  In *Bateman II*, however, the Ninth Circuit addressed its *Kline* decision in great detail and nevertheless reached the conclusion that it did. *See Bateman II,* 623 F.3d 708.

23(b)(3) factors, it finds no reason to assume that the class members' interests in individually controlling the prosecution or defense of separate actions makes individual actions superior.  Additionally, although Calloway notes that Bush is involved in other lawsuits, there is no evidence that any litigation pertaining to this particular controversy has begun "by or against any class members."  Fed. R. Civ. P. 23(b)(3)(B).  Given that the River City Five Guys is located in Jacksonville, Florida, there is also no question that this is the appropriate forum in which to "concentrate the litigation of the claims."  Fed. R. Civ. P. 23(b)(3)(C).  Finally, the parties do not raise any issues that lead the Court to conclude there will be any significant difficulties in managing this class action.  Fed. R. Civ. P. 23(b)(3)(D).  Accordingly, the Court concludes that a class action is a superior method for resolving these FACTA claims.

> **D.     Notification**

Pursuant to the Court's instructions at the December 14, 2011 hearing, Bush submitted its "Proposed Notice of Class Certification."  Since that time, the parties have come before Magistrate Judge Klindt and likely otherwise conferred.  Additionally, Bush states in the Proposed Notice that it "presupposes that the posture of the case remains contested." (Doc. No. 53, p. 1.)  Therefore, the Court instructs the parties to comply with the directives set forth in the Conclusion of this Order, and reserves ruling on any issues surrounding notification until it is fully briefed.

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED:**

1)      Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law (Doc. No. 31) is **GRANTED**.

2)     Plaintiff Bush is **DIRECTED** to file a "final" proposed notice, including the final definition of the class, on or before April 9, 2012.  Bush shall also indicate his intended method of publication.  If he does not wish to make any changes to the Proposed Notice (Doc. No. 53) or method of publication presented within that notice, he may instead file a notice indicating the same with the Court.

3)     Defendant Calloway is **DIRECTED** to file any objections to Bush's final proposed notice of class certification, definition of the class, and method of publication on or before April 23, 2012, indicating any changes it seeks to make to the notification or the method of publication.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on March 26, 2012.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record