# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

JEREMIAH BUSH, individually and
on behalf of all others similarly situated,

        Plaintiff,

                                   Case No. 3:10-cv-841-J-RBD-MCR

v.

CALLOWAY CONSOLIDATED GROUP
RIVER CITY, INC., a Florida corporation,
d/b/a FIVE GUYS FAMOUS BURGER &
FRIES,

        Defendant.

_____

## JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT[1]

    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), Jeremiah Bush, Plaintiff, and Calloway Consolidated Group River City, Inc. d/b/a Five Guys Famous Burger & Fries, Defendant, (the "Parties"), by and through their respective undersigned counsel, respectfully request final approval of the proposed Class Action Settlement embodied in the Settlement Agreement that this Court preliminarily approved in its Order dated August 10, 2012 (D.E. 69; herein "Preliminary Approval Order").

    As set forth below, the settlement is fair, adequate and reasonable and satisfies all applicable requirements for final approval.

    The Full Notice of Certified Class Action Settlement was published on Class Counsel Carlson Lynch's web site at www.carlsonlynch.com beginning on August 14, 2012, and has

---

[1] The parties waited until today, November 16, 2012, to file this Joint Motion for Final Approval of Settlement Agreement so as to know whether there were any objections to the Class Settlement. The deadline for objections to and requests for exclusion from the settlement was November 10, 2012, and as of the filing of this Joint Motion no objections or requests for exclusion have been received.

remained continuously posted on that web site since that date through the filing of this Motion, a period of more than 75 days.[2]  Pursuant to the terms of the Settlement Agreement approved by the Court, a copy of the Notice of Class Action Settlement was published in the Jacksonville, Florida Financial News and Daily Record on August 22, 2012.[3]

The last day to file objections to the Settlement was November 10, 2012, which was also also the last day for class members to request exclusion from the Class.  No objections have been lodged against the Settlement by class members, and no class member has requested exclusion from the Settlement Class.[4]  There has thus been no opposition to the Settlement.  On the record before the Court, the Settlement should be given final approval.

## I.  BACKGROUND OF THE LITIGATION

Class Representative Jeremiah Bush ("Plaintiff") filed the instant action on September 14, 2010.  On behalf of himself and other putative class members, Plaintiff alleges that Defendant, Calloway Consolidated Group River City, Inc. d/b/a Five Guys Famous Burger & Fries ("Five Guys"), violated the Fair and Accurate Credit Transaction Act , 15 U.S.C. § 1681 *et seq.* ("FACTA").  Specifically, Plaintiff alleges that Five Guys violated 15 U.S.C. § 1681(g)(1) which provides:

> [N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale of the transaction.

The Rule 26(f) Report filed by the Parties on November 3, 2010, noted agreement to use a third party mediator.  *See* D.E. 13.  Throughout the last quarter of 2010 and through the first half of 2011, the Parties, through their counsel, engaged in detailed discussions and negotiations

---

[2] Declaration of Michael L. Duncan ("Duncan Declaration") attached hereto as Exhibit 1, at ¶ 3.

[3] Declaration of Lee Goldstein ("Goldstein Declaration") attached hereto as Exhibit 2.

[4] Duncan Declaration at ¶¶ 4-5.

concerning the issues involved in this lawsuit, but were unable to make real progress or reach agreement. Plaintiff conducted formal discovery and deposed the Defendant and witnesses. Defendant engaged in formal discovery and deposed the named Plaintiff. Also, the parties conducted informal discovery and voluntarily exchanged certain information in an effort to efficiently compile and obtain information needed to resolve issues involved in this case. Ultimately, the Plaintiff moved for class certification, which was granted by the Court on March 26, 2012.

The settlement discussions and negotiations between the parties were extensive and protracted, requiring certain deadlines in the litigation to be extended. *See, e.g.,* D.E. 19, 20, 23, and 24. The parties agreed to hold settlement conferences before the Hon. James R. Klindt. *See* D.E. 52. Multiple settlement conferences were held before Magistrate Judge Klindt, *see* D.E. 55, 56, 57, 64, and 65, and it was only during the last settlement conference that the Parties reached an agreement to globally settle the claims at issue in this case on a class action basis.

The Parties ultimately executed a Class Action Settlement Agreement ("Settlement Agreement") and filed the Settlement Agreement with the Court on July 31, 2012.

Pursuant to this agreement, the Parties have agreed to certification, for settlement purposes only, of the following Class:

> **All consumers, expressly excluding any judge and judicial officer and judicial staff member employed by or assigned to the United States District Court for the Middle District of Florida and all of their immediate family members and persons related to them as defined in 28 U.S.C. § 455(b), to whom Defendant CALLOWAY CONSOLIDATED GROUP RIVER CITY, INC., doing business as FIVE GUYS FAMOUS BURGER & FRIES, from its restaurant located at 13249 City Square Drive, Space 101, River City Marketplace, Jacksonville, Florida, provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring between December 23, 2008 and September 17, 2010, on which Defendant CALLOWAY CONSOLIDATED GROUP RIVER CITY, INC., doing**

business as **FIVE GUYS FAMOUS BURGER & FRIES, printed the expiration date of the consumer's credit card.**

## II.    THE TERMS OF THE SETTLEMENT

Defendants acknowledge that between December 23, 2008 and September 17, 2010, Five Guys was using Point of Sale Equipment that was not programmed to truncate the expiration date of the credit card from the receipts that were presented to their customers. As a result, thousands of Five Guys customers were presented with receipts wherein the credit card expiration date was displayed. Defendant vehemently maintains that it did not willfully violate FACTA's truncation requirements and that, on the contrary, they took specific steps calculated to fully comply with FACTA.

The Parties agree that neither the Plaintiff, nor any putative Class Members, have suffered any actual monetary injury as a result of the FACTA claims at issue.

To the extent that any putative member of the proposed class incurred actual damages, those members could have opted out or been excluded from and not be bound by the Settlement Agreement. Against this backdrop, and in the interest of avoiding protracted and costly litigation, Defendant has agreed to a proposed settlement with the following basic terms: Defendant has agreed to provide all participating claimants a settlement voucher good for use at the Five Guys Famous Burgers & Fries location at 13249 City Square Drive, Space 101, River City Marketplace, Jacksonville, Florida worth $5.00 toward the purchase of any food, product or service at such store. Defendant has further agreed that, to the extent any such settlement voucher distributed to any participating claimant is rejected or not honored by the Five Guys Famous Burgers & Fries location at 13249 City Square Drive, Space 101, River City Marketplace, Jacksonville, Florida, such settlement voucher may be presented to Calloway

Consolidated at care of Lee S. Goldstein, Esq., Cohen Goldstein Port & Gottlieb, LLP, 990

Hammond Drive, Suite 990, Atlanta, GA 30328, for cash payment of $5.00.

There were approximately seventy two thousand (72,000) transactions wherein class

members' expiration dates were printed on receipts presented to them at the point of sale.

Accordingly, Defendant has agreed that it will disseminate not only those settlement vouchers

claimed by Participating Claimants, but a minimum total of five thousand (5,000) settlement

vouchers. Because Defendant no longer controls the day-to-day operations of the subject Five

Guys Famous Burgers & Fries store, in order to effectuate this requirement of the Settlement

Agreement, Defendant has agreed that it will, until 5,000 total settlement vouchers have been

distributed, provide such settlement vouchers to one or more of the following local charities: (a)

Boys and Girls Club of Northeast Florida; (b) City Rescue Mission of Jacksonville; (c) I.M.

Sulzbacher Center for the Homeless; and (d) Clara White Mission, Inc.

Defendant has further agreed that it will continue to abide by the truncation requirements

of FACTA, as amended, or as it may be amended in the future.

### III. MULTIPLE FEDERAL COURTS HAVE APPROVED ANALOGOUS PROPOSED SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF FACTA'S TRUNCATION REQUIREMENTS

Since FACTA became fully effective on December 4, 2006, Courts have entered final

approval and final judgment in connection with numerous class-based settlements of FACTA

truncation actions. *See, e.g., Cicilline v. Jewel Food Stores, Inc.*, 542 F. Supp. 2d 831 (N.D. Ill.

2008); *Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290 (N.D. Ill. 2008); *Matthews v.

United Retail, Inc.*, 248 F.R.D. 210 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249

F.R.D. 284 (N.D. Ill. 2008); *Troy v. Red Lantern Inn, Inc.*, No. 07-C-2418, 2007 WL 4293014

(N.D. Ill. Dec. 4, 2007); *Halperin v. Interpark, Inc.*, No. 07-C-2161, 2007 WL 4219419 (N.D.

Ill. Nov. 29, 2007); *Pastore v. Le Creuset, Inc.*, No. 2:09-cv-01139-DSC (W.D. Pa. Mar. 28, 2011); *Ehrheart v. Verizon Wireless*, No. 2:07-cv-01165-DWA (W.D. Pa. Feb. 10, 2011); *Bell v. Alltel Commc'n, Inc.*, No. 2:08-cv-00648-JFC (W.D. Pa. Feb. 16, 2011); *Hanlon v. Aramark Corp., LLC*, No. 2:09-cv-00465-GLL (W.D. Pa. May 19, 2010); *Klingensmith v. Max & Erma's Rests., Inc.*, No. 2:07-cv-00318-LPL (W.D. Pa. Oct. 23, 2007); *Hughes v. InMotion Entm't*, No. 2:07-cv-01299-AJS (W.D.Pa. Sept. 30, 2008); *Curiale v. Hershey Entm't & Resorts Co.*, No. 07-cv-00651 (M.D. Pa. May 21, 2008); and *Ehrheart v. Lifetime Brands, Inc. d/b/a Pfaltzgraff Factory Stores, Inc.*, No. 2:07-cv-01433-JP (E.D.Pa. June 5, 2008).

## IV.   CERTIFICATION OF A SETTLEMENT <u>CLASS IS APPROPRIATE AND WARRANTED</u>

As the Court has previously certified the Plaintiff Class in this case, this analysis appears moot. Nevertheless, to the extent further analysis of settlement class certification is necessary, it is worth noting that the benefits of the proposed Settlement can be realized only through the certification of a settlement class. The Supreme Court of the United States has confirmed not only the viability, but the desirability, of such settlement classes. *See Amchem Prods. V. Windsor*, 521 U.S. 591 (1997). So, too, have the federal courts of appeal. *See, e.g., In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) ("*Prudential II*"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

In cases such as this, involving issues of consumer protection, courts have consistently held that the use of the class action mechanism is "desirable and should be encouraged." *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980); *Gordon v. Boden*, 586 N.E.2d 461 (Ill. App. Ct. 1991), *cert. denied*, 506 U.S. 907 (1992)("[i]n a large and impersonal society, class actions are often the last bastion of consumer protection.").

This Court and other Florida federal courts have certified class actions on other consumer claims seeking recovery of statutory damages. *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822-CIV, 2009 WL 5479111, at *1 (S.D. Fla. Dec. 11, 2008) (granting motion for class certification on FDCPA statutory damages claim); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004) (granting motion for class certification on FDCPA and state law claims); *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697 (M.D. Fla. 2000) (same); *Swanson v. Mid. Am., Inc.*, 186 F.R.D. 665, 666-69 (M.D. Fla. 1999) (granting motion for class certification on FDCPA claims). In fact, Judge Bucklew certified a FACTA settlement class and entered a final order approving settlement nearly one year ago in *Hudak v. Columbia Restaurant of St. Augustine, Inc.*, Case No. 8:10-cv-1314-T-24MAP (Final Approval Order and Final Judgment, entered Dec. 20, 2011).

The Eleven Circuit has found class certification appropriate in consumer actions alleging statutory violations. *See, e.g. Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1327 (11th Cir. 2008) (in RESPA matter, affirming trial court's finding that class representative and putative class met each requirement of Rule 23(a), reversing trial court's denial of class certification under Rule 23(b), and determining proposed class satisfied Rule 23(b)(3)).

Notably, the only two Federal Courts of Appeals which have addressed class action treatment of FACTA claims, the Fourth and the Ninth Circuits, have *reversed* orders denying class certification. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010); *Stillmock v. Weis Mkts., Inc.*, 385 Fed. Appx. 267 (4th Cir. 2010). Further, United States District Courts throughout the country have routinely recognized the propriety of class certification in FACTA truncation cases. *See, e.g., Keller v. Macon Cnty. Greyhound Park, Inc.*, No. 3:07-cv-1098-WKW, 2011 WL 1085976 (M.D. Ala. Mar. 24, 2011); *Armes v. Sogro, Inc.*, No. 08-C-0244,

2011 WL 1197537 (E.D. Wis. Mar. 29, 2011); *Hammer v. J.P. Sw. Foods, LLC*, 267 F.R.D. 284 (W.D. Mo. 2010); *Rogers v. Khatra Petro, Inc.*, No. 2:08-CV-294, 2010 WL 2894100 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's Butcher Shop, Inc.*, No. 09-C-3774, 2010 WL 658863 (N.D. Ill. Feb. 22, 2010); *Shurland v. Bacci Café & Pizzeria on Ogden Inc.*, 259 F.R.D. 151 (N.D. Ill. 2009); *Armes v. Shanta Enter., Inc.*, No. 07-C-5766, 2009 WL 2020781 (N.D. Ill. July 8, 2009); *Beringer v. Standard Parking, Corp.*, Nos. 07-C-5027, 07-C-5119, 2008 WL 4390626 (N.D. Ill. Sept. 24, 2008); *Cicilline*, 542 F. Supp. 2d 831; *Harris v. Best Buy Co., Inc., et al.*, 254 F.R.D. 82 (N.D. Ill. 2008); *Klingensmith*, 2007 WL 3118505, at *2-3; *Redmon*, 2008 WL 656075; *Matthews,* 2008 WL 618960; *Meehan*, 249 F.R.D. 284; *Troy*, 2007 WL 4293014; *Halperin*, 2007 WL 4219419; *Medrano*, 2007 WL 4922525.

## A.     The Rule 23(a) Prerequisites Are Satisfied

The four prerequisites of Rule 23(a) are that:

(1)     the class be so numerous that joinder of all members is impracticable;

(2)     there be questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties be typical of the claims or defenses of the class; and,

(4)     the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003).

### 1.     Numerosity

For a class action to be appropriate, the proposed class must be so numerous that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To meet this requirement, the class representative(s) need only show that "common sense" suggests that it would be difficult or

inconvenient to join all the members of the class. *In re Bell Atlantic Corp. Sec. Litig.*, [1995-96 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 99,007, at 93,920 (E.D. Pa. Dec. 11, 1995); H. Newberg & A. Conte, *Newberg on Class Actions*, § 3.05, at 3-25 (1992)("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."); *see also Welch v. Bd. Of Dirs. Of Wildwood Golf Club*, 146 F.R.D. 131, 135 (W.D. Pa. 1993) (the Court of Appeals for the Third Circuit has generally held that numerosity requirement is met if proposed class exceeds 100 members).

No definite standard exists as to what size class satisfies the requirements of Rule 23(a). *See Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 666 (M.D. Fla. 2000). Within the Eleventh Circuit, the numerosity requirement is generally satisfied when the class has more than 40 members. *See, e.g., Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986). It is well established that a plaintiff need not prove the exact number of members or identify each class member. *See Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009); *Evans v. U.S. Pipe and Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

Here, during the time period set forth in the Class Definition, Defendant presented approximately 72,000 customers with receipts wherein the expiration date of their credit card was displayed. Defendants do not contest numerosity and it is readily apparent.

## 2.      Commonality

Rule 23(a)(2) requires only that there be a single common question of law **or** fact in order for the court to certify the class action. Fed. R. Civ. P. 23(a)(2); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). This is not a heavy burden and it "is easily met in

most cases." Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, s. 3.10, at 3-50 (3d. ed. 1992).   Rule 23(a)(2)'s commonality requirement requires "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355; *see also Prudential II*, 148 F.3d at 310; *Hoxworth v. Blinder, Robinson & Co, Inc..*, 980 F.2d 912, 924 (3d Cir. 1992).

Plaintiff's Complaint specifically lists the common issues implicated by his claims. Courts have found such allegations to be "common" for purposes of class certification. *See, e.g. In re Chambers Sec. Litig.*, 912 F. Supp. 822, 833 (W.D. Pa. 1995); *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070, 1075 (W.D. Pa. 1991).

Thus the numerous common questions alleged in Plaintiff's Complaint easily satisfy the commonality requirement of Rule 23(a)(2).   Other courts have previously confirmed that commonality exists in the context of similar claims under FACTA.   Nearly every district court which has addressed the issue of commonality in FACTA cases has held that the aforementioned legal and factual issues unquestionably meet the threshold for commonality. *See, e.g. Stillmock*, 385 Fed. Appx. at 272-73 ("Here, the putative class members were exposed to the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant . . . it strains credulity to conclude that the individual damages issues presented by the purported class which [p]laintiffs seek to certify would be anything other than simple and straightforward."); *Keller*, 2011 WL 1085976, at *6; *Hammer*, 267 F.R.D. at 288 (finding the overriding legal issue of whether the non-compliance was willful such that class members are entitled to statutory damages and the overriding factual issue of defendant's standardized conduct shows commonality is met); *Shurland*, 259 F.R.D. at 158 ("common questions of fact (when and under what circumstances Defendant printed the receipts on its machines) and law

(assuming Defendant printed the receipt, whether Defendant did so willfully and what damages may be appropriate)" met commonality); *Matthews*, 2008 WL 618960, at *4 ("the common nucleus of operative fact is the defendant's issuance of receipts that display the expiration date or more than five digits of a person's credit card in violation" of FACTA); *Cicilline*, 542 F. Supp 2d. at 836.; *Reynoso*, 2007 WL 4922524, at *2 ("The overriding legal issue is whether [defendant's] non-compliance was willful.... . Accordingly, there is a common core of salient facts and legal issues.").

### 3.   Typicality

Rule 23(a) requires that the claims of the representative party be "typical" of those of the class.   Typical, however, does not mean identical, and factual homogeneity between the representative plaintiff and all Class Members is not required. *Prudential II,* 148 F.3d at 57; *Chambers*, 912 F. Supp. at 834 ("typical" does not mean "identical"); *Safran v. United Steelworkers of Am., AFL-CIO*, 132 F.R.D. 397, 402 (W.D. Pa. 1989).

Here, the named Plaintiff's claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. The claim of every Class member is based upon the same allegedly "willful" conduct by Defendant. Plaintiff, as well as each member of the class, received a credit/debit card receipt containing information prohibited by FACTA.   Plaintiff's claims are, therefore, not only typical of the claims of the Class, they are virtually identical to them. *See Hammer*, 267 F.R.D. at 287 (accepting plaintiff's claim that his claims are identical to those of the proposed class); *Redmon*, 2008 WL 656075, at *3 (finding plaintiff's claim typical of those of class members where plaintiff and class members all received receipts from defendant which violated FACTA); *Meehan*, 249 F.R.D. 284 (same); *Troy*, 2007 WL 4293014, at *2 (same); *Cicilline*, 542 F. Supp. 2d at 836 (same); *Reynoso*, 2007

WL 4922524, at *3 (plaintiff's claim is not only typical of, but "substantially identical" to, claims of class members, where he alleged that defendant a receipt in willful violation of FACTA); *Medrano*, 2007 WL 4922525, at * 3 (same); *Meyer v. CUNA Mut. Grp.*, No. 03-Civ-A-602, 2006 WL 197122, *17-*19, (W.D. Pa. 2006);

### 4.    Adequacy of Representation

The fourth and final prerequisite of Rule 23(a) is that "the representative parties ... fairly and adequately protect the interests of the class."   The Third Circuit has confirmed that "[a]dequate representation depends on two factors:  (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class."  *Hoxworth*, 980 F.2d at 923 (quoting *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir. 1984)) (internal quotation marks omitted); *see also Meyer* at * 19; *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975); *Chambers*, 912 F. Supp. at 834-35.

Here, there are no conflicts of interest or other antagonisms between Plaintiff, on the one hand, and Class Members, on the other.   All were consumers with the mutual incentive to establish the alleged violation of FACTA.   All class members were impacted by the practices at issue in an identical manner.

In addition, Plaintiff's Counsel has provided fair and vigorous representation for the Class, successfully moving for class certification in this case.   Plaintiff's Counsel has substantial experience in similar consumer class action litigation, and Mr. Carlson has been previously found to be adequate class counsel.[5]

---

[5] *See* Motion to Certify Class, Exhibit 3. (D.E. 31).

Finally, as a Court stated in *Chambers*, the "proof is in the pudding." *Id.* at 835. The Settlement in this case is wholly warranted and appropriate, which becomes more manifest in the discussion of the *Girsh* factors below. Thus, the adequacy requirement of Rule 23(a)(4) is readily satisfied.

### B.   The Requirements Of Rule 23(b) Are Satisfied

Rule 23(b) provides in pertinent part:

(b)   **Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition:

*****

(3)   the court finds that the questions of law or fact common to the members of the class predominate over any issues affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These requirements are satisfied here for settlement purposes.

### 1.   Common Questions Of Law And Fact Predominate Over Questions Affecting Only Individual Members Of The Class

In *Amchem*, the Supreme Court noted that the Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." 521 U.S. at 594. The Supreme Court then noted that the predominance requirement is easily met in cases, such as this one, alleging a uniform violation of a consumer protection statute. *Id.* at 2250. The Eleventh Circuit and other courts have indicated that claims alleging the violation of a consumer protection statute by way of standardized documents are appropriate for class action treatment. *See, e.g., Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1327 (11th Cir. 2008) (reversing trial court's denial of class certification under Rule 23(b)); *Prudential II*, 148 F.3d

13

283. Defendant does not dispute the issue and this case is no exception. *See Lerch v. Citizens First Bancorp, Inc.*, 144 F.R.D. 247, 252 (D.N.J. 1992); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 724-25 (11th Cir. 1987); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct. These allegations of a common course of conduct "provide[] the 'single central issue'" required to ensure predomination of common questions over individual issues. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 511-512 n.45 (D.N.J. 1997) ("*Prudential I*") (citing numerous other cases).

Similarly, the damage issues in this case are especially well suited for class-wide resolution because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's willful noncompliance with the truncation requirements of FACTA. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996); *see also Prudential I*, 962 F. Supp. at 516.

## 2.    A Class Action Is The Superior Means To Adjudicate The Claims At Issue For Settlement Purposes

It is well-accepted that the class-action mechanism generally provides the superior approach to handling consumer protection claims such as the present case. *See, e.g., Ingram v. Joe Conrad Chevrolet, Inc.*, 90 F.R.D. 129, 133 (E.D. Ky. 1981). Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes, and courts within this district have previously determined that superiority exists in the context of similar claims under FACTA. *See Klingensmith, supra.*

**a.**   **Most Class Members Have An Insufficient Interest To Justify Individual Lawsuits**

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery. Aggregate litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful – such as identity theft – and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendants on behalf of credit and debit card users presents many of these elements. The class action mechanism for settlement is meant to afford remedies

to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of S.W. v. Falcon,* 457 U.S. 147, 155 (1982). The claims at issue here are such that class relief is the only realistic alternative to no relief at all, for the vast majority of Class Members. *Prudential I,* 962 F. Supp. at 522-23. This factor thus plainly supports certification for settlement purposes.

>     **b.**     **The Extent And Nature Of Other Pending Class Actions Does Not Present Any Impediment To Certification Of This Settlement Class**

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

>     **c.**     **This Court Is An Appropriate Forum For Resolution Of The Claims In Dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient. *Shutts,* 472 U.S. at 811-812

>     **d.**     **Manageability**

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem,* 521 U.S. at 620; *Prudential II,* 148 F.3d at 316 n. 57.

## V.     THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL

### A.     Final Approval Of The Settlement Is Within The Sound Discretion Of The Court And Is Favored By Strong Judicial Policy

In addition to determining whether the proposed settlement class satisfies the requirements of Fed. R. Civ. P. 23(b)(3), the Court must separately conclude that the proposed

settlement is fair, reasonable and adequate. *In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1314–15 (11th Cir. 2009) (abrogated on other grounds by *Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869 (2010)) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

Trial courts within the Eleventh Circuit, when evaluating a class settlement, must consider the following factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *In re CP Ships*, 578 F.3d at 1315.

While the approval of a proposed class action settlement is a matter within the sound discretion of the Court, *see In re CP Ships*, a strong judicial policy favors resolution of litigation short of trial, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding protracted, expensive litigation. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). When a settlement is reached on terms agreeable to all parties, it is to be encouraged. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993).

The Settlement at issue here enjoys a presumption that it is fair and reasonable because it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length ... . (3) the proponents of the settlement are experienced in similar litigation ... ."); *see also Manual for Complex Litigation, Third* § 30.43 (1995). Although a court must independently evaluate a proposed settlement, the court should credit the judgment

of experienced counsel in doing so.  Conversely, the reviewing court must avoid substituting its image of an "ideal settlement" for the views of the "compromising parties," and must keep in mind the fact that a settlement is, after all, "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Prudential I,* 962 F. Supp. at 534.  As one court has framed the issue:

> 'The test is whether the settlement is adequate and reasonable and not whether a better settlement is conceivable.' *In re Flat Glass Antitrust Litig., slip op.* at 6 (W.D. Pa. Feb. 9, 2000). As stated in the Manual for Complex Litigation, Third, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Id.* § 30.42

*Williams Foods, Inc. v. Eastman Chemical Co.*, No. 99-c-16680, 2001 WL 1298887, * 2-*3 (Kan. Ct. App. Aug. 8, 2001) (citing *In re Vitamins Antitrust Litig.*, at 87,417 (D.C. 2000)).

Another court has noted:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.
>
> *****
>
> Neither the district court nor this court is empowered to re-write the settlement agreed upon by the parties.  We may not delete, modify, or substitute certain provisions of the consent decree.  Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted.  Approval must be given or withheld . . . .  In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 625, 630 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also Lake v. First Nationwide Bank*,

900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'") (*citing Austin v. Pennsylvania Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)).

Here, Class Counsel are fully familiar with the facts and law applicable to this litigation and are well-acquainted with the prosecution of class actions, generally, and with class-based consumer fraud claims, in particular.  Before entering into the Settlement, Class Counsel litigated this case strenuously, obtaining and reviewing significant data in discovery and deposing the necessary witnesses, and then thoroughly evaluating the information obtained and successfully using it to obtain class certification.  Class Counsel also engaged in extensive negotiations with Defendant's counsel, reviewed information provided by Defendant, and took into account, among other things, the factors that courts have identified as being relevant to the determination of whether a class settlement is fair, reasonable and adequate.  The evaluation of those factors resulted in Class Counsels' recommendation that the proposed settlement be accepted as fair, reasonable and adequate as is set forth below.

**B.**     **The Settlement Is Fair, Reasonable And Adequate**

**1.**     **The Applicable Factors Support The Settlement**

The Eleventh Circuit Court of Appeals' factors, when applied to the proposed Settlement, demonstrate that it is fair, reasonable and adequate and should be approved.

**a.**     **Continued Litigation Would Be Long, Complex And Expensive, and Settlement was Accomplished Only After Extensive Negotiation and Informal Exchange of Information.**

Courts have consistently held that the expense and possible duration of litigation are factors to be considered in evaluating the reasonableness of a settlement.  As one court stated:

[W]ithout approval of the proposed settlements, the parties must explore the existence and scope of the alleged conspiracy, damages, actions by defendants to

conceal the alleged conspiracy, and whether the plaintiffs exercised due diligence in discovering defendants' conduct. Further, in light of the earlier skirmishes, we conclude that the Settling Defendants would have 'ardently contested the action at every step, leading to a plethora of pretrial motions.' *In re GMC*, 55 F.3d at 812.

In contrast, the settlements make remedies immediately available to the class members, thereby avoiding the substantial delay and expenses that would accompany the pursuit of this litigation against the Settling Defendants . . . .

We also note that continuation of the proceedings against the Settling Defendants would undoubtedly consume inordinate amounts of the court's time, as well as class counsel. A trial would involve a battle of experts, as evidenced by the sparring prior to class certification and would involve a large number of fact witnesses. Moreover, the likelihood of appeals following a trial on the merits by disappointed litigants would necessarily follow. *Accord, In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995).

*****

Examining the magnitude of the settlement class 'as well as the complexity of the issues raised, we conclude the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both parties[.]' *In re Prudential*, 148 F.3d at 318. The prospect of such an undertaking weighs in favor of settlement.

*Id.* at 7-9.

The FACTA class action claims at issue are, by definition, complex, and they implicate unsettled areas of applicable law. While Class Counsel would not have asserted the claims if they were not confident that they could make persuasive arguments in favor of both liability and class certification, they acknowledge that if the claims were fully litigated, Plaintiff would have to face considerable risks, particularly in the context of establishing that Defendants' violations of FACTA were "willful," which is a prerequisite to Plaintiff's ability to recover statutory damages.

The Settlement, on the other hand, permits a prompt resolution of the claims at issue, in a manner that is fair, reasonable and adequate to the Class, while at the same serving the Congressional purpose of causing the truncation of personal consumer credit data on receipts

provided to consumers at the point of sale. This result will be accomplished at least months, and perhaps years, earlier than otherwise might be possible absent a settlement. Standing alone, the relatively expeditious resolution of the disputed claims benefits the Class, specifically, and consumers, generally.

Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *Chambers,* 912 F. Supp. at 837; *In re Flat Glass Antitrust Litigation*, Slip Op. at 8; *see also TBK Partners, Ltd. v. W. Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd,* 675 F.2d 456 (2d Cir. 1982). Given the prospects for significant discovery, abundant motion practice, a jury trial and probable appeal process, as well as the substantial risks involved, a settlement at this time is beneficial to the Class. *In re First Commodity Corp. of Boston Customer Accounts Litig.*, 119 F.R.D. 301, 314 (D. Mass. 1987).

This factor thus plainly weighs in favor of approval of the proposed Settlement.

### b.      There are no objections to the Settlement.

"In an effort to measure the reaction of the class to the settlement's terms, courts look to the number and tone of the objections." *In re Flatglass Antitrust Litig., Id.*, Slip Op. at 9 (*citing In re GMC*, 55 F.3d at 812). "The reaction of the class is perhaps the most significant factor to be weighed in considering its [the settlement's] adequacy." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 294 (E.D. Pa. 2003). Here, after adequate notice consistent with the Court's directive in the Preliminary Approval Order, there have been no objections to the Settlement and no request for exclusion from the Settlement. This fact strongly supports final approval of the Settlement.

### c.      Plaintiff Faced Considerable Risk In Establishing Liability

In assessing the fairness, reasonableness and adequacy of the Settlement, the Court should balance the risks of establishing liability against the benefits afforded by the Settlement, and the immediacy and certainty of an adequate recovery against the risks of continuing litigation. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 789 F.2d 35 (2d Cir. 1986).

Uncertainty is inherent in complex litigation. "[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *State of W. Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971); *see also Bell Atlantic Corp.*, 2 F.3d at 1313 ("Even if plaintiffs hoped to secure a large damage award, this would have to be drastically discounted by the improbability of their success on the merits . . . ."). In the context of this litigation, the risks that Plaintiff faces in establishing liability are manifest, and this factor thus favors approval of the proposed Settlement.

Indeed, Plaintiff's ability to prove a "willful" violation of FACTA is a prerequisite to *any* statutory damage award. As noted above, there are no guarantees that Plaintiff would be able to sustain this burden. *Perry v. FleetBoston Fin. Corp.*, 299 F.R.D.105, 115-116 (E.D. Pa. 2005).

This factor favors approval of the proposed Settlement.

### d.      Range of Possible Recovery and Range of Possible Recovery at Which Settlement is Fair, Adequate and Reasonable.

The last two factors are the reasonableness of the settlement in light of (i) the range of possible recovery, and (ii) the range of possible recovery at which a settlement is fair, adequate and reasonable. Courts have had regular occasion to opine on these factors. One of the most

comprehensive analyses was set forth in *Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290, 339

(W.D. Pa. 1997), wherein it was stated:

> The settlement amount here represents a percentage of Plaintiffs' experts' damages estimates that is well within the range typically approved by courts in passing on reasonableness. *See e.g., Erie Forge & Steel, Inc. v. Cyprus Minerals Co.,* Civil Action No. 94-404 (W.D. Pa. December 23, 1996)(approving settlement of $3.6 Million where plaintiffs' expert estimated damages at $33 million); *Fox v. Integra Financial Corp.,* Civil Action No. 90-1504 (W.D. Pa. July 9, 1996)(approving settlement of $6.5 million where plaintiffs' best estimate of provable damages was $33 million); *In re Four Seasons Sec. Litig.,* 58 F.R.D. 19, 36-37 (W.D. Okla. 1972)($8 million settlement approved, although claims exceeded $100 million); *Cagan v. Anchor Savings Bank FSB,* [1990 Transfer Binder] Fed. Sec. L. Rep. (CCH) 95,324 at 96,559, 1990 WL 73423 at * 12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million dollar settlement over objections that `best possible recovery would be approximately $121 million"); *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("The mere fact that the proposed settlement of $.20 a share is a small fraction of the desired recovery of $3.50 a share is not indicative of an inadequate compromise."), *aff'd* 899 F.2d 21 (11th Cir. 1990).
>
> In light of the well-recognized risks faced by litigants in proving liability and damages in cases of this type, courts have determined that a settlement can be approved even if benefits amount to a small percentage of the recovery sought. In *Detroit v. Grinell Corp.,* 495 F.2d 448, 455 (2d Cir. 1974), *impliedly overruled in non-relevant part by Missouri v. Jenkins,* 491 U.S. 274 (1989), the Second Circuit stated: `The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.' And, `there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery.' 495 F.2d at 455 n.2.
>
> Consequently, class settlements involving far smaller percentage recoveries have been approved. *See, e.g., Weinberger v. Kendrick,* 698 F.2d at 65 ($2.84 million settlement upheld which, because of legal difficulties amounted to 'only a negligible percentage of the losses suffered by the class,' which were estimated at between $250 million and $1 billion); *Fisher Bros., Inc. v. Mueller Brass Co.,* 630 F.Supp. 493, 499 (E.D. Pa. 1985)(approving settlement of 0.2% of sales; *Behrens v. Wometco Enters., Inc.,* 118 F.R.D. at 542 (settlement of 5.7% of total damages); *Cagan v. Anchor Savings Bank FSB, supra.* (settlement of $2.3 million where estimated damages were $121 million); *Mersay v. First Republic Corp. of America* [1967-1969 Transfer Binder] Fed. Sec. L. Rep. (CCH) 92,304 at 97,443 (S.D.N.Y. 1968)(5-10%); *In re Four Seasons Securities Litig.,* 58 F.R.D. at 36-37 (settlement of less than 8% of estimated damages); *Bagel Inn, Inc. v. All Star Dairies,* 1982-1 Trade Cases (CCH) 64,512, 1981 WL 2185 at * 3 (D.N.J.

1981)(settlement of 8% of potential damages);  *Feder v. Harrington,* 58 F.R.D. 171, 176 (S.D.N.Y. 1972)(Court approved settlement of 16% of 'realistic damages').

On appeal, the Third Circuit readily endorsed this analysis, stating:

> From the objectors' point of view, our opinion should be devoted largely to a merits analysis of their objections to the settlement, measured by the standards outlined in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975).  **However, we dispose of that aspect of the case summarily, concluding that the *Girsh* factors are easily met and that the District Court did not abuse its discretion in approving the settlement** . . . .
>
> *****
>
> We note specifically that the plaintiffs faced a not insignificant risk of losing a summary judgment motion if this case was not settled;  of the possible exclusion of their damage experts following a *Daubert* hearing; and of an adverse verdict if the case reached trial . . . .

*Lazy Oil Co. v. Witco Corp.,* 166 F.3d 581, 584, 588 (3d Cir. 1999)(emphasis added).

> The risks of litigation are particularly weighty here, on the issues of both liability and damages.  Further complicating matters is the fact that "no reported class action cases have ever been brought or classes certified under the theory [used by Plaintiffs in this case]." (internal citation omitted)  The Court concludes that, given the circumstances, the settlement is within the range of reasonableness in light of the attendant risks of litigation.

*Perry v. Fleet Boston,* 229 F.R.D. at 117.

The Parties agree that the retail value of the Settlement Relief made available to the class is $360,000 (72,000 X $5.00), with a guaranteed distribution of at least $25,000.00 (5,000 Settlement Relief Vouchers X $5.00).  In addition, Defendant has paid the costs of publication notice to the class and has agreed to pay reasonable counsel fees and costs for Class Counsel. Further, Defendants have agreed that the Final Judgment to be entered herein include a decree which obligates them to remain in compliance with FACTA's truncation requirements.

While the maximum possible value of this litigation would potentially be $72,000,000 (72,000 X $1,000), this maximum possible value must be weighed against the risk and cost

involved in taking a case such as this through trial. When such a balancing is performed, it seems clear that the Settlement is fair, reasonable and adequate.

Plaintiff respectfully suggests that the proposed Settlement is fair, reasonable and adequate and represents a responsible and appropriate compromise of this litigation. Defendants concur.

## VI.  CONCLUSION

For all of the foregoing reasons, the Parties respectfully request that the Court enter the Proposed Final Approval Order and Proposed Final Judgment, approving the proposed Settlement.

Respectfully submitted,

**VOLPE, BAJALIA, WICKES,
ROGERSON & WACHS**

Michael L. Duncan, Esquire
Florida Bar No. 50946
Jamie W. Olinto, Esquire
Florida Bar No. 85179
501 Riverside Avenue, 7th floor
Jacksonville, Florida 32202
904-355-1700 (Telephone)
904-355-1797 (Facsimile)
mduncan@vbwr.com
jolinto@vbwr.com

and

**COHEN, GOLDSTEIN, PORT &
GOTLIEB, LLP.**

  /s/ Lee S. Goldstein
Lee S. Goldstein, Esq. (*pro hac* vice admitted)
Cohen, Goldstein, Port & Gotlieb, LLP
990 Hammond Drive
Suite 990
Atlanta, GA 30328
770-393-0990 (Telephone)
770-901-9417 (Facsimile)
lgoldstein@cgpglaw.com

R. Bruce Carlson, Esq. (*pro hac* vice admitted)
Carlson Lynch Ltd.
231 Melville Lane
P.O. Box 367
Sewickley, PA 151434
412-749-1677 (Telephone)
412-749-1686 (Facsimile)
bcarlson@carlsonlynch.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing *Joint Motion for Final Approval of Settlement Agreement* of was served via CM/ECF on this 16th day of November, 2012 and all counsel or parties of record on the service list.

                                                  Attorney

Service List:

Lee S. Goldstein, Esq.
990 Hammond Drive
Suite 990
Atlanta, GA 30328

Richard J. Plotkin, Esq.
Lee S. Haramis, Esq.
50 N. Laura Street
Suite 1100
Jacksonville, FL 32202

3500.00200/370